Martha C. KAMM, a widow, et al.,
Plaintiffs-Appellants,

v.

CALIFORNIA CITY DEVELOPMENT
COMPANY, a corporation, et al.,
Defendants-Appellees.

No. 73–3241.

United States Court of Appeals,
Ninth Circuit.

Jan. 9, 1975.

Thomas Elke (argued), San Francisco, Cal., for plaintiffs-appellants.

Ronald L. Olson (argued), of Munger, Tolles, Hills, & Richershauser, Los Angeles, Cal., for defendants-appellees.

Before CHAMBERS and KILKENNY, Circuit Judges, and JAMESON,[*] District Judge.

## OPINION

JAMESON, District Judge:

This is an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b),[1] from an order dismissing plaintiffs-appellants' class action and striking class allegations from their first amended complaint.[2]

### Parties and Nature of Controversy

The 14 named plaintiffs and the estimated 59,000 members of the class whom they seek to represent are investors in a desert land promotion scheme known as California City. The defendants-appellees are the current promoters of California City, Great Western Cities; three of its affiliated real estate companies, California City Development Co., GWU Properties, Inc. and California City Realty Co.; N. K. Mendelsohn, officer, director and principal shareholder of California City Development Co.; Great Western United, the corporate parent of Great Western Cities and two other defendants, Shakey's Inc. and Great West-

---

[*] Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

[1] The interlocutory appeal was authorized by order of this court entered November 18, 1973.

[2] The order was made pursuant to Rule 23(c)(1) and (d)(4) of the Federal Rules of Civil Procedure.

ern Sugar; and the incorporated City of California City.

California City is a body of barren land comprised of approximately 100,000 acres in the Mojave Desert. The defendant promotors bought the land, divided it into some 90,000 lots, and commenced selling the lots as part of a planned city. To date, the promoters have sold and resold an estimated 59,000 residential, commercial and industrial lots for an estimated $200 million. The lots were primarily purchased for investment reasons. About 2,000 people live in California City.

### Allegations of Complaint

Alleging a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure,[3] plaintiffs charged that the defendants had defrauded the investors by failing to disclose fully to them the nature of the property and the risks inherent in the investment plan. Specifically, the first amended complaint alleged that (1) the California City lots constitute securities or investment contracts which were marketed by means of deceptive practices in violation of Section 10b of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b) ), and Rule 10b-5 thereunder; (2) the same deceptive practices violated the Interstate Land Sales Act; (3) the sale of California City lots violated the registration provisions of the Interstate Land Sales Act in that the defendants made material misrepresentations in the "Statement of Record" filed with the Department of Housing and Urban Development pursuant to 15 U.S.C. § 1703(a)(2)(B); (4) the land scheme was falsely registered under the California Subdivided Lands Act; and (5) the defendants' actions were fraudulent and constituted a breach of trust.

### Motion to Dismiss

Pursuant to Rule 23(c) and (d), the defendants moved to dismiss the class action and to strike all class allegations "on the ground that the alleged class action is not the superior method for resolving the alleged controversy". They contended that even if it were assumed that the alleged class satisfied all of the prerequisites of Rule 23(a) and the "common issue requirement" of Rule 23(b)(3), the class action did not constitute a "superior method for the fair and efficient adjudication of the controversy". Defendants' motion was based primarily on the fact that state action had already been commenced by the California Attorney General and Real Estate Commissioner with respect to the same controversy and relief had been obtained.

### State Litigation and Agreement

The Attorney General and the Real Estate Commissioner of California on March 8, 1973, acting pursuant to comprehensive statutory powers set forth in the California Subdivided Lands Act, Cal.Bus. & Prof.Code § 11000 et seq. (West Supp.1974) and regulations thereunder, and the California deceptive and misleading advertising statute, Cal.Bus. & Prof.Code § 17500 et seq. (West Supp. 1974), commenced an action in state court against four of the defendants[4]

---

**3.** Rule 23(b) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of

separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

**4.** The four defendants in the state action were Great Western Cities, Inc., GWU Properties, Inc., California City Realty Corporation and California City Development Company.

for false and misleading advertising and deceptive sales practices. Concurrently, a stipulation of the parties and a proposed permanent injunction and final judgment were filed. Attached to the judgment as an exhibit was a copy of a settlement agreement, also dated March 8, 1973. In the stipulation the defendants accepted service of the complaint and consented to the entry of the final judgment and permanent injunction, without admitting the allegations of the complaint other than those alleging jurisdiction. The judgment, entered the same date, expressly approved the terms and conditions of the settlement agreement and ordered the parties "to carry out the executory provisions contained therein". The court retained "continuing jurisdiction to the full extent provided by law . . . ".

The settlement agreement between the Attorney General and Real Estate Commissioner and the defendant Great Western Cities, Inc., provided for offers of restitution of prinicpal payments to certain purchasers.[5] The agreement defines a "purchaser" as one who executed a purchase agreement for land in California City, between January 1, 1966 and December 31, 1970 or one who saw a certain sales film and executed a purchase agreement between January 1, 1971 and May 17, 1972, inclusive. Purchasers are divided into two groups—offerees and claimants. An offeree is a purchaser who prior to September 16, 1972 indicated either by means of a negative response to a questionnaire[6] or by

a direct communication to the Attorney General or Real Estate Commissioner his belief that there was a material misrepresentation of fact in connection with his purchase of land. All purchasers who after September 16, 1972 appropriately responded to the questionnaire or complained about misrepresentation are claimants. Offerees were entitled to refunds aggregating about $2,300,000 in restitution. Claimants were entitled to an aggregate of $1,000,000.

With respect to other persons who purchased land, the agreement provided that Great Western Cities would "use its best efforts to establish and implement a program to settle future disputes". The company is required to "render quarterly reports to the office of the Attorney General setting forth the names of complainants and summarizing the general nature of such complaints and the disposition thereof".

Defendants were also permanently enjoined from engaging in deceptive sales practices and from making or disseminating, or permitting to be made or disseminated, any false or misleading representations relating to the sale of real property in California City.

There is nothing in the settlement agreement which would preclude any purchaser who did not accept an offer and execute a release from instituting action against the defendants or otherwise seeking recovery for any alleged damage.[7] Appellants concede that these alternate remedies are available.

---

5.  The agreement provided that 90% of the payments to California residents would be in 7% secured notes of Great Western Cities and 10% in cash. Non-California residents were to receive a single cash payment.

6.  The agreement recites that the term "questionnaire" refers to questionnaires "used by the Company, with the consent of the Attorney General, to solicit certain information" from purchasers of land during certain periods. The term "negative response" refers to a response containing "an allegation of a material misrepresentation of fact by the Company". It is recited further that the Company and Attorney General "have reviewed the Questionnaires and have determined which Questionnaires contain Negative Responses".

7.  Under the terms of the agreement, the state released the defendants from any further state claims of fraud and illegality. The agreement states:

    "Q. *Release*: The Attorney General and the Commissioner hereby release the Company, GWU Properties, Inc., California City Realty Company, their officers, directors, employees, representatives, independent sales representatives, predecessors, and successors from all known claims, liabilities, obligations, actions and causes of action, of any nature, by reason of any other matter, cause or thing occurred, done, omitted or suffered to be done prior to the date of this Agreement".

## Ruling of District Court

In opposing the motion to dismiss, plaintiffs-appellants contended that (1) the motion was premature because time was needed for discovery with respect to the class action issues; and (2) the class action was superior because the state action involved a different controversy and provided relief for only a small part of the class.

At the time of oral argument, the court denied plaintiffs' request for further discovery. An order was subsequently entered dismissing the class action aspects of the suit, the court finding that

" . . . a class action is not superior to other available methods for the fair and efficient adjudication of the controversy herein, especially in light of the proceedings already brought by the California Attorney General and Real Estate Commissioner . . . and of the relationship of these proceedings to the facts and posture of this particular case".

Two issues are raised on appeal: (1) Whether the court erred in refusing to grant plaintiffs an opportunity for further discovery; and (2) whether the class action constituted a "superior method" of adjudicating the controversy.

## Discovery

In support of their motion to dismiss, the defendants filed an affidavit of Bruce Ducker, Vice President of Legal Affairs for Great Western United Corporation and Great Western Cities. The affidavit (comprising 26 pages) and appended exhibits (comprising 100 pages) detail the negotiations and settlement between the defendants and the Attorney General and Real Estate Commissioner and procedures followed pursuant to the settlement agreement.

No opposing affidavits were filed by plaintiffs. Rather they contended that discovery should be permitted with respect to all matters set forth in the Ducker affidavit which were not a part of the public record. At the hearing plaintiffs argued that in the absence of discovery the court could properly consider only those matters which were part of the public record,[8] i.e. the statutes authorizing the Attorney General and Real Estate Commissioner to seek relief for people injured by deceptive sales practices and misrepresentation, the complaint filed against the defendants in state court, the permanent injunction and judgment, and the settlement agreement.[9]

Appellants contend on appeal that the statutes and the record of the proceedings in the state court action did not sufficiently apprise the district court of the nature of the state action or settlement agreement.[10] Relevant information, they argue, was contained in letters, records of meetings, and documents which were not before the state court, and the district court's reliance on this extraneous matter, without affording plaintiffs an opportunity for discovery, constituted error.

Whether or not discovery will be permitted in a case of this nature lies within the sound discretion of the trial court. *See* Berland v. Mack, 48 F.R.D. 121, 126 (S.D.N.Y.1969). Rule 23(c)(1) provides that "*As soon as practicable* after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so

---

8. It may be noted, however, that appellants in their briefs both in the district court and on appeal relied in part on the Ducker affidavit and appended documents, particularly in attacking the adequacy of the questionnaire and extent of its mailing.

9. Appended to the settlement agreement were a press release issued jointly by the parties to the agreement, an instrument reciting the terms of the secured notes, and the form of release to be executed by offerees and claimants.

10. Specifically, they argue that information regarding the method of determining what investors would be offered restitution, how many would actually receive restitution, the aggregate amount of restitution to be offered, and the nature of the program structured by Great Western Cities to deal with future disputes was not a part of the public record.

maintained". In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination. The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses.[11] To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.

In determining whether the district court abused its discretion, two related questions are presented: (1) whether the district court did in fact rely on matters outside the public record; and (2) whether the information contained in the public record or otherwise admitted by plaintiffs was sufficient to justify a dismissal of the class action without further discovery.

■ From a review of the record of the proceedings in the state court action, the written memoranda filed in the district court in this action, and the proceedings at oral argument, we find that the district court did not abuse its discretion in denying the request for further discovery. While it is true that the defendants through the Ducker affidavit introduced numerous facts relating to the settlement negotiations which were not a part of the public record, we conclude that the record itself provided a sufficient evidentiary base on which the "superiority" question might be determined. Moreover, it does not appear that the district court relied on matters outside of the public record in reaching its conclusion. Throughout the hearing, counsel for plaintiffs strenuously urged their contention that, in the absence of discovery, the court was limited to a consideration of the public record. This was recognized by the court, as indicated by the following colloquy between the court and plaintiffs' counsel:

"MR. WELLS: No, I am telling you, Your Honor, we have been denied any discovery in this case. We have had no opportunity to investigate through normal discovery channels any of the matters that are attached to the . . [Ducker affidavit].

"THE COURT: What do you want to discover? We have the record of the State lawsuit. We know under—

"MR. WELLS: There is nothing in that record.

"THE COURT: We know under what legal authority it was brought. We know that it was brought and we know it was settled and we know the provisions of the decree. What do you want to discover?" [12]

### Superiority of Class Action

■ To permit the action to proceed as a class action under Rule 23(b)(3), it was necessary for the district court to find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy". The trial judge has broad discretion in making this determination. "If he applies the correct criteria to the facts of the case, the decision should be considered to be within his discretion". Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 793 (10 Cir. 1970).

In contending that the district court abused its discretion, appellants first ar-

---

11. As stated by the First Circuit in Yaffee v. Powers, 454 F.2d 1362, 1366 (1972):

"To pronounce finally, prior to allowing any discovery, the nonexistence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23. Evidence which might be forthcoming might well shed light on a final decision on this issue."

12. The colloquy continued:

"MR. WELLS: We have been talking, for example, about adequacy of notice.

"THE COURT: We have been talking about it, but is it really vital?

"MR. WELLS: It would be vital to a determination under Rule 23.

"THE COURT: Anybody that wants can still bring a lawsuit. There is no res adjudicata. The only question is, should we have a class action."

gue that the court erred in weighing a judicial remedy against an administrative remedy, i.e. the state action. They rely on dictum in *Amalgamated Workers Union of the Virgin Islands v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540 (3 Cir. 1973) where the court said:

"As we view it, it would appear that the rule was not intended to weigh the superiority of a class action against possible administrative relief. The 'superiority requirement' was intended to refer to the preferability of adjudicating claims of multiple-parties in one judicial proceeding and in one forum, rather than forcing each plaintiff to proceed by separate suit, and possibly requiring a defendant to answer suits growing out of one incident in geographically separated courts . . .

" . . . We find no suggestion in the language of Rule 23, or in the committee notes, that the value of a class suit as a superior form of action was to be weighed against the advantages of an administrative remedy. *We leave this question, however, for disposition in an appropriate case.*" (emphasis added). *Id.* 478 F.2d at 543.

We agree with Wright and Miller, Federal Practice and Procedure: Civil § 1779 (1973 Supp. at 17) that this statement in *Amalgamated Workers* is "an overly restrictive" reading of Rule 23(b)(3). "Since the purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of settling the controversy, it seems consistent with that purpose to determine whether any administrative methods of settling the dispute exist." *Id.*

Moreover, the action in state court is more than an administrative remedy. Following investigation and negotiations, the California officials instituted representative litigation in the Superior Court of Los Angeles County. That court still retains jurisdiction. In addition, unlike *Amalgamated Workers,* the court here is not simply considering "possible administrative relief", but rather a remedy which has already been instituted.

Appellants' primary contention is that the class action is in fact superior because the California state action (1) does not sufficiently represent and protect the interests of the entire class and (2) does not adjudicate the same controversy.

It is true that not all members of the class appellants seek to represent will be protected by the California settlement; nor will the class recover an amount that is even close to that sought in the class action. Except for those post-1970 purchasers who viewed a certain sales film, only those offerees and claimants who purchased lots or parcels between 1966–1970 are entitled to share in the estimated $3,300,000 in restitution offered by defendants. All other investors, including those purchasing before 1966 and after 1970, are limited to either seeking relief through the "future dispute" program structured by Western Cities or instituting their own private actions. Appellants argue that because of the narrow scope of the state relief the proposed class action must be found to be superior to the settlement in the California state action.

The superiority requirement is unique to those class actions maintained under Rule 23(b)(3). With reference to Rule 23(b)(3), the Advisory Committee explained in its Note to Amended Rule 23, 39 F.R.D. 98, 102–103:

"In the situations to which this subdivision [(b)(3)] relates, class-action treatment is not as clearly called for as in those described above, [i.e. (b)(1) and (b)(2)], but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results".

As the Advisory Committee noted, the court must "assess the advan-

tages of alternative procedures for handling the total controversy". Many factors must be considered in determining whether a class action is superior to other available methods. As an aid for determining the superiority question, Rule 23(b)(3) lists four factors (see Note 3). This is not, however, an exhaustive list. In the recent case of Katz v. Carte Blanche Corp., 496 F.2d 747, 760 (3 Cir. 1974) the court noted that Rule 23(b)(3) superiority determinations must "take into account several different interests". The court said:

> "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues."

■ In its order dismissing the class action and striking the class allegations, the district court did not make detailed findings of fact,[13] but found generally that "a class action is not superior to other available methods for the fair and efficient adjudication of the controversy", especially in light of the proceedings already brought by the California officials in state court and "the relationship of these proceedings to the facts and posture of this particular case".

■ Although not expressly articulated by the district court, many factors support the court's determination: (1) A class action would require a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work on the state level. (2) The class action would involve 59,000 buyers in separate transactions over a 14 year period, with part of the buyers desiring to retain their land. (3) Significant relief had been realized in the state action through (a) restitution to many members of the class; (b) Western Cities' agreement to establish a program to settle future disputes;[14] (c) a permanent injunction; and (d) a letter of credit in the amount of approximately $5,000,000 to guarantee funds for off-site improvements.[15] (4) The state court retained continuing jurisdiction. (5) No member of the class is barred from initiating a suit on his own behalf. (6) Although the class action aspects of the case have been dismissed, appellants' action is still viable.[16] (7) Defending a class action would prove costly to the defendants and duplicate in part the work expended over a considerable period of time in the state action. These factors as a whole support the conclusion of the district court that the class action was not a superior method of resolving the controversy.[17]

Finally, appellants contend that the district court erred in considering the California action as an alternative to the

13. While specific findings would have been helpful to the parties and this court, they are not required in dismissing a class action pursuant to Rule 23(c)(1). Wright and Miller, Federal Practice and Procedure: Civil § 1785 at 134.

14. Both parties argue the effect of an arbitration program instituted by Western Cities and the Attorney General, but this program was instituted subsequent to the settlement agreement and does not appear in the public record.

15. The press release appended to the settlement agreement recites that the settlement was the "last of several steps" and that "Earlier GWC had arranged for a letter of credit,

up to $5 million, to assure availability of funds for the installation of off-site improvements. Also, engineering studies indicate that the City now has access to water sources sufficient to service anticipated future growth."

16. Moreover, some of the named plaintiffs appear to be in the class to whom offers of restitution will be made.

17. Appellants in their briefs appear to assume that the district court held that the state action was superior. Rather, the court held that the class action was not superior to "other alternative methods", especially in the light of the state action. The alternative methods would consist of individual suits as well as participation in the state settlement plan.

class action, arguing that the state action did not involve the same controversy, did not include five of the defendants named in this action, and did not provide the class-wide restitution sought in this case.

We cannot agree that these differences render the state action so different a controversy that it should not have been considered by the district court in determining whether the class action was superior to alternative methods. The state action was based on a charge of misleading advertising and deceptive sales practices. While appellants have charged false registration under the Interstate Land Sales Act, a violation of the Securities Exchange Act of 1934, and false registration under the California Subdivided Land Act, both actions involve the same fraudulent conduct of the defendants and both seek to provide relief for those injured thereby.

Considering only those facts properly before the court, we conclude that the court did not abuse its discretion in dismissing the class action.

Affirmed.