Joani Elizabeth HAGEN, on Behalf of herself and all others similarly situated, Plaintiff,

v.

CITY OF WINNEMUCCA, Joe Jamello, Phil Speight, Les Jones, and Charles M. Jackson, Defendants.

No. CV–R–84–194–ECR.

United States District Court, D. Nevada.

Oct. 11, 1985.

Robert R. Hager, Reno, Nev., for plaintiff.

William G. Cobb, Erickson, Thorpe, Swainston & Cobb, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

### FACTS

In this case, plaintiff, a citizen of Great Britain and a former Winnemucca prostitute, seeks to prosecute a class action on behalf of all Winnemucca prostitutes against that city and various of its officials. At issue are 23 "police rules" which the City of Winnemucca and its police chiefs have promulgated in order to regulate strictly the prostitution industry in that city. The rules are quite restrictive, prohibiting the "girls" who work as prostitutes from, among other things, living in the city, from renting rooms in hotels or going in to residential areas, from having male "acquaintances" in the city, and from marrying. Violation of any of the 23 rules is cause for the suspension of the prostitute's police work card, which she must have in order to ply her trade in the city.

In January, 1981, plaintiff applied for and received such a work card and began employment in Winnemucca as a prostitute. In June of that year, the plaintiff married, and was promptly given notice by the defendant that her work card had been revoked, and that she could no longer work as a prostitute in the city. In addition, defendants allegedly threatened plaintiff with arrest if she remained in the city.

In May of 1984, plaintiff brought this action under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, seeking legal and equitable relief for the alleged infringement of her constitutional rights. In addition, plaintiff sought to have her cause certified as a class action, alleging that the whole group of Winnemucca prostitutes were similarly deprived. Essentially, plaintiff contends that the police rules were illegally instituted, that their existence and enforcement denied her exercise of fundamental rights, and that the deprivation of the work card without notice or hearing deprived her of property without due process of law. Defendants moved to dismiss under Fed.R. Civ.P. 12(b)(6), arguing that no deprivation of due process had occurred, in that the State of Nevada had created no property right in the prostitutes' work cards, and that the federal constitution had not created a fundamental right to work as a prostitute. In addition, defendants objected for several reasons to the naming of plaintiff as the representative of the class of Winnemucca prostitutes.

This case comes to this court by way of the United States Magistrate who heard the motions to dismiss and to certify the alleged class. In her report, the Magistrate recommends the following:

1. that the plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 be dismissed for lack of subject matter jurisdiction;

2. (a) that the defendants' motion to dismiss be granted as to plaintiff's claim to a procedural due process claim to the police work card;

   (b) that the defendants' motion to dismiss be denied as to plaintiff's claims

that the police rules infringed upon fundamental rights;

3. that the plaintiff's motion for class certification be denied without prejudice.

The Court has reviewed *de novo* the portion to which no objection has been made, and has found it to be an accurate statement of the law. This position of the report and recommendation is thus accepted and adopted. 28 U.S.C. § 636(b)(1); Local Rule 11(c)(I)(B)(3) (D.Nevada). Parties have objected to part 3 of the Magistrate's report, which concerns the class certification. The Court now addresses the entire certification issue *de novo*.

## CLASS CERTIFICATION

In order for a lawsuit to proceed as a class action, the plaintiff must first demonstrate that she meets the numerosity, commonality, typicality, and representative requirements of Fed.R.Civ.P. 23(a). *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir.1976). Although these factors must be satisfied, they are not necessarily exhaustive of the class action prerequisites. *Kamm v. California City Development Co.*, 509 F.2d 205 (9th Cir.1975). The court may also examine whether the class action is a *superior* method of trying the issues, in light of the entire judicial system, potential class members, the present plaintiff, attorneys for the litigants, the public at large, and the defendant. *Id.* at 212. Once the prerequisites for the class action have been satisfied, the case must fit into one of the three subdivisions of Rule 23(b) in order to proceed. *Green, supra* at 1339.

## CLASS PREREQUISITES

*1. Class definition*

■ Although not specifically mentioned in Rule 23(a), a class must be sufficiently definite in order to warrant certification. As one court has stated, "[t]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine

whether a particular individual is a member." *Aiken v. Obledo*, 442 F.Supp. 628, at 658 (E.D.Cal.1977); *see Rutherford v. United States*, 429 F.Supp. 506 (D.Okl. 1977), *rev'd on other grounds*, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1978). Plaintiff's descriptions of the class, contained in the complaint and the motion to certify, are as follows:

> [A]ll persons whose Constitutional rights have been, during the four years immediately preceding the commencement of this action, are or may be violated pursuant to a de facto policy of the City of Winnemucca, which was and is implemented by police officers of the said city, to summarily punish [sic] persons who were or are perceived by certain police officers to be "bums and other undesirable," by means of unlawful revocation of police work cards, harassment, verbal abuse, threats, invasion of privacy, denial of due process, deprivation of liberty, malicious use and abuse of process, and other intentional violation [sic] and deliberate denial of Constitutional rights of said class members. [Complaint, paragraph 4].

> \*     \*     \*     \*     \*     \*

> All persons whose Constitutional rights have been, during the four years immediately preceding the commencement of this action, are or may be violated by the City of Winnemucca's promulgation and enforcement of those certain 23 written and those certain unwritten rules of prostitution. [Motion to Certify, p. 6].

By plaintiff's definition, the class would then consist of all persons whose constitutional rights have been violated by the City policies regarding prostitution in the period four years before the complaint was filed.

This definition is insufficient, in that it would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member. In essence, the court would have to pass on the merits of the claim at the class certification stage in order to tell who was

included in the class. The Supreme Court has held, however, that courts may not consider the merits of the claim at certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) (Eisen IV); *see Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983).

This does not defeat plaintiff's attempt at defining a class, however. Many circuits have held that the court itself may construct a definition of the class, *Metcalf v. Edelman,* 64 F.R.D. 407 (N.D.Ill.1974), or may modify a proposed definition where the original is inadequate, *Metropolitan Area Housing Alliance v. Dept. of Housing and Urban Development,* 69 F.R.D. 633 (N.D.Ill.1976). As the Magistrate correctly noted, a much more precise and acceptable definition of the class would be:

> All persons who held police department work permits as prostitutes in the City of Winnemucca, Nevada, from May 18, 1981, to May 18, 1984.

This definition would make the task of ascertaining class members much easier, in that the court would not be required to inquire into the merits of the claim.

### 2. Numerosity

■ The numerosity requirement of Rule 23(a)(1) merely requires that the class be large enough as to make joinder impracticable. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964). Under the court-modified definition, potential class members would number close to 450, according to defendants' own reckoning. Although joinder would not be strictly impossible for 450 plaintiffs, that number would clearly make joinder impracticable. *Harris, supra; see Gonzales v. Sheely,* 96 F.Supp. 1004 (D.Ariz. 1951) (class of 300 sufficient). The Court therefore finds that the numerosity element of the Rules has been satisfied.

### 3. Commonality

■ Rule 23(a)(2) requires that questions of law or fact must be common to all class members in order for the class to be certi-

fied. This provision of the Rule has not been interpreted to mean that all claims of the class members must be identical, but merely that a common significant thread of law or fact must predominate. As the Ninth Circuit has noted, the Rule "does not require that all the members of the class be identically situated, if there are substantial questions of law or fact common to all." *Harris,* supra at 914. *See Blackie v. Barrack,* 524 F.2d 891, 902–3 (9th Cir.1975) *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (fraud perpetrated on numerous persons by use of similar representations appealing situation for class actions).

Civil rights litigation often provides a rich field for the cultivation of class actions, in that a common discriminatory scheme or policy creates a common question of law or fact. In *Inda v. United Air Lines, Inc.,* 83 F.R.D. 1 (N.D.Cal.1979) *rev'd on other grounds,* 565 F.2d 554 (1977), for example, a group of female flight attendants challenged under Title VII the airline's prohibition of marriage. Finding that this policy was a uniform, across the board rule applicable to all female attendants, the court held that the commonality requirement of the Rule had been easily satisfied in spite of individual fact variations among the class members' cases. *Id.* at 11. In light of *Inda,* this Court has no difficulty in finding that the present class satisfies Rule 23(a)(2), in that the constitutionality of the police rules presents a question which is common to all class members. The fact that the individual class members may have been injured in different ways and to different extents does not overcome the existence of the common constitutional question. *See Blackie, supra.*

### 4. Typicality

■ In order to gain certification, the class representatives must demonstrate that their claims are typical of those of the entire class. In *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496 (9th Cir.1980), the court noted that named representatives

must be injured in the same manner as the class members. *Id.* at 505 (citing *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)). This does not mean that the plaintiff's claim must be identical to the others, for courts have held that "factual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory." *Ouellette v. International Paper Co.,* 86 F.R.D. 476 at 479 (1980) (citing *Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 488 (N.D.Cal. 1978)). Thus, the fact that plaintiff in the present case may not have been injured in the identical manner as other class members does not prevent her from acting as a class representative, as long as plaintiff's general theory of recovery is typical of the classes'.

As plaintiff's counsel has indicated in the objection to the Magistrate's report, however, plaintiff is apparently subject to deportation for her activities as a prostitute under 8 U.S.C. § 1182(a)(12). This fact seriously damages plaintiff's ability to represent adequately the interests of all class members, for in order to remain "typical," the named representative's claims must not be subject to unique defenses that are inapplicable to claims of the other class members. *Quellette, supra* at 480; *Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y. 1978). In the present case, it seems possible that plaintiff's possible deportation could be used against her as a defense, which defense would be unavailable against the other class members. Therefore, the plaintiff's claims cannot be classified as "typical" for the purposes of the Rule.

### 5. Adequate Representation

Rule 23(a)(4) indicates that the named representative must represent the interests of the unnamed class members adequately. This section of the Rule reaches constitutional dimensions, in that the class action's outcome is result binding on all class members. *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940); *Scott v. University of Delaware,* 601 F.2d 76, at 85 (3rd Cir.1979) *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). The Ninth Circuit has held that adequate representation depends on quality of the representative's counsel, an absence of class antagonism, a sharing of interests between the representative and the absent class members, and the unlikelihood that the suit is collusive. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847 (9th Cir. 1982) *cert. denied* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1982). This list, however, is not exhaustive of the requirements for the representative. *See Kamm, supra.* As the Fifth Circuit has noted, "the court may take into account outside entanglements that render it likely that the representative may disregard the interests of the other class members." *Blum v. Morgan Guarantee Trust Co. of New York,* 539 F.2d 1388 at 1390 (5th Cir.1976).

Plaintiff's possible deportation certainly bespeaks such an "outside entanglement." Deportation proceedings would most certainly distract the plaintiff's attention from the vigorous prosecution of this lawsuit, which would seriously prejudice the rights of the unnamed parties. In addition, if the deportation occurs, the class representative would be forcibly removed from the United States, unable to return to participate effectively in any lawsuit.

One court has noted, however, that residence outside the United States does not necessarily prevent one from effectively representing a class. In *Billett v. Storage Technology Corp.,* 72 F.R.D. 583 (S.D.N.Y. 1976), defendants challenged a proposed certification on the grounds that the representative might be living abroad during the pendency of the case. The court noted that "[t]he fact that a class representative may reside outside the country, *given modern means of communication and travel,* is not necessarily prejudicial to the interests of the class." *Id.* at 587 (emphasis supplied). Thus, the court predicated its certification of the non-resident representative partly on his ability to return quickly to the United States.

If the plaintiff is deported during the pendency of this suit, she will not be able to return to the United States. 8 U.S.C. § 1182(a)(12). Although counsel assures the Court that the policy of the Immigration and Naturalization Service is to stay all deportation proceedings until any civil litigation is completed, there is nothing in the Code to indicate that this is indeed true. Unlike the plaintiff in *Billett*, the present plaintiff would not be capable of returning to the country if needed. This is a serious disability, and prevents this Court from allowing plaintiff to act as a class representative.

IT IS, THEREFORE, HEREBY ORDERED that the Magistrate's report and recommendation, Sections I and II which grant and deny defendants' motions to dismiss and for summary judgment, is adopted and approved and that Plaintiff's motion to certify this as a class action is *DENIED*.