**Kenneth BROWN, Participant, and Judy Brown, Plan Administrator of the Liquid Molding Systems, Inc. Group Health Plan, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, INC., Defendant.**

**No. 94–CV–75033–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

April 19, 1996.

---

Fredric N. Goldberg, Ronald J. Clark, John C. Stuive, Grand Rapids, MI, Dennis Murray, Sr., Kirk J. Delli Bovi, David Yeagley, Sandusky, OH, Marvin L. Karp, Steven Bell, Michael Ungar, Lawrence Peskin, Cleveland, OH, Steven W. Berman, Clifford Cantor, Seattle, Washington, F. James Donnelly, Denver, Colorado, for Plaintiff.

Lisa Sewell DeMoss, Charles N. Raimi, Detroit, MI, for Defendant.

## OPINION

DUGGAN, District Judge.

### I. Background

Currently before the Court are plaintiffs' motion for class certification, defendant's motion to dismiss class allegations,[1] defendant's motion for summary judgment, and plaintiffs' cross-motion for partial summary judgment. Oral argument on the motions took place on March 14 and 15, 1996. This Opinion addresses only plaintiffs' motion for class certification and defendant's motion to dismiss class allegations.

The facts underlying the present action are not seriously in dispute. Defendant offers health insurance coverage and related claim administrative services to individuals and groups, including employer group health plans. Defendant is regulated by the State of Michigan through the Nonprofit Health Care Corporation Reform Act, M.C.L.A. § 550.1101, *et seq.* ("Act 350").

In August 1989, Liquid Molding Systems, Inc. ("Liquid Molding") entered into a Group Operating Agreement with defendant, under which Liquid Molding sponsored a group health plan for its employees that was insured by defendant ("the Plan"). The Plan, which has approximately 30 beneficiaries, is a cost-sharing plan, requires the Plan's participants to pay a designated portion of their medical costs through deductibles and co-insurance. Under the Plan, the participants have a 20% co-insurance obligation for hospital charges.

In 1989, defendant entered into a new participating hospital agreement ("PHA") with most Michigan hospitals, under which the hospitals were paid by defendant using a Diagnostic Related Group ("DRG") methodology. The DRG was not based on each hospital's standard charge, *i.e.*, the customary rate, but on a discounted charge which generally was less than the hospital's standard charge. Defendant computed plan participants' co-insurance obligations for hospital charges at 20% of the hospital's standard charge, rather than the DRG-computed amount. That computation is the basis for the present action and is identified as the "challenged practice." The "Explanation of Benefits" forms ("EOBs") sent to subscribers who paid co-insurance failed to disclose defendant's discounts.

In October 1993, plaintiff Kenneth Brown ("Kenneth"), at that time an active employee of Liquid Molding covered by the Plan, received treatment from MidMichigan Regional Medical Center, the total charges for which were $171.70. Under the terms of the Plan, Kenneth paid 20% of that amount or $34.34; defendant actually paid $103.02, rather than $137.36, based on a PHA defendant had with MidMichigan that discounted defendant's to-

[1.] The Insurance Commissioner and Attorney General for the State of Michigan join in defendant's request to dismiss plaintiffs' class allegations in favor of a conditional settlement agreement entered into between defendant and the State on January 16, 1996.

tal charges by 20%. In effect, Kenneth paid 25% of the total charges rather than 20% as provided in the Plan.

In October 1994, defendant discontinued the challenged practice and changed the EOBs to reflect defendant's actual payments.

On December 16, 1994, Kenneth and Judy Brown ("Judy"), as participant and plan administrator respectively of the Plan, brought suit against defendant for enforcement of the terms of the Plan under ERISA, 29 U.S.C. § 1132(a)(1)(B) and (a)(3), and for breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2), (a)(3), 1104 and 1109. As relief, plaintiffs seek, in part, restitution in the form of excess co-insurance wrongfully paid; an injunction requiring defendant to properly pay all benefits as specified in the Plan documents; an accounting of amounts saved by defendant due to its challenged co-pay practice; and the identity of putative class members.

On January 16, 1996, defendant entered into a conditional[2] settlement agreement with the State's Insurance Commissioner and Attorney General ("the agreement"), see n. 1, supra.[3] The agreement followed an investigation by the Insurance Commissioner and Attorney General which was prompted by litigation on similar issues in other states.

Under the agreement, defendant agrees to refund all overpayment of co-insurance, subject to administrative constraints which make it impossible or prohibitively expensive to attempt to compute refunds with precision, including the refund of de minimis amounts. (Def.'s Mot. to Dismiss ¶ 6).[4] The agreement provides for refunds of up to approximately $24.4 million, representing the maximum possible amount overpaid for the time period of January 1, 1989 to date. Id. ¶ 7; Reply Br. in Supp. at 1.[5] The agreement binds only subscribers who sign and return a claim form.[6] Under the agreement, defendant will accept, without verification, the representation of subscribers that all co-insurance amounts billed by hospitals have been paid by them, though, in fact, a substantial percentage of such amounts are not paid. (Def.'s Br. in Supp. of Mot. to Dismiss at 7 n.*). At oral argument, defense counsel indicated that in some instances, hospitals waive the co-insurance amounts.[7]

Defendant will send one notice of the agreement to subscribers via direct mail. (Def.'s Reply in Supp. of Mot. to Dismiss at 8). To the extent subscribers do not respond within one year of said notice,[8] the State of Michigan has an additional five years to administer the settlement fund, continue efforts to notify subscribers and continue making payments to them.[9] The intent of the Commissioner of Insurance is to use a tracking agency in order to ensure that all settle-

2. The settlement is contingent upon this Court not certifying the present lawsuit as a class action.

3. On that same date, defendant filed its present motion to dismiss class allegations based in part on the agreement with the State.

4. Under the agreement, a refund will be issued for any subscriber who has a claim for $10 or more in any one year or $25 or more in the aggregate. (Def.'s Br. in Supp. of Mot. to Dismiss at 15).

5. The Attorney General met with the Commissioner of Insurance to have the Insurance Bureau pay the expenses of a CPA firm to assist in determining defendant's maximum liability. (State's Position Stmt. at 2). The Bureau receives approximately $1,000,000 each year as an assessment (which is paid by defendant) to offset the cost of regulating defendant. Id. The Insurance Commissioner retained Coopers and Lybrand as a consultant to assist in the State's investigation. Coopers and Lybrand issued a final report on February 19, 1996 which determined defendant's liability at $24,455,000. (Def.'s Reply in Supp. of Mot. to Dismiss at 1; State's Position Stmt. at 2). The report, which cost $140,000, was paid for out of the assessment. (Hr'g Tr. at 61 (Mar. 14, 1996)).

6. Plaintiffs argue, therefore, that the agreement will not encompass a large number of subscribers, those who do not sign the claim forms.

7. Defendant asserts that it would be irresponsible to distribute millions of dollars to subscribers without requiring representations that they have paid co-insurance, and asserts that the claim form process prevents payment to subscribers who have since moved or died.

8. The "Notice of Claim and Release" instructs subscribers to return the form within 90 days.

9. Under the agreement, defendant is obliged to give the State lists with names and addresses of those subscribers who do not file claims. (Hr'g Tr. at 13 (Mar. 15, 1996)).

ments are paid within the five-year period. (State's Position Stmt. at 2–3). After those six years, defendant "recaptures" all unclaimed settlement funds.[10]

Six days after the agreement was entered into and defendant's motion to dismiss class allegations was filed, plaintiffs filed their motion for class certification.

## II. Discussion

■ Under Fed.R.Civ.P. 23, plaintiffs move the Court to certify this action as a class action to be maintained on behalf of a class comprised of:

> All ERISA employee welfare benefit plans that were underwritten and/or administered[11] by [defendant], and all individuals (except directors, officers, employees, and attorneys of [defendant]) who were participants in such plans at any time since January 1, 1975, for which or for whom [defendant] made discounted or otherwise reduced payments for health care charges but did not directly pass the discount or reduction back to the plan on a dollar-for-dollar basis, or did not directly pass back to the plan participant a pro rata reduction in coinsurance, or accounted for any benefit caps (e.g., lifetime maximums, mental health maximums) based on the unreduced charges instead of [defendant's] reduced payments.

Pls.' Mot. for Class Cert.[12] Plaintiffs note that a number of cases have been brought regarding discount schemes functionally identical to the scheme at issue here; in each of those cases, class certification was granted. However, in none of those cases was the trial court faced with a conditional settlement

agreement between the defendant insurer and the Attorney General and Insurance Commissioner of each respective State. Based on the agreement,[13] defendant argues that no purpose would be served by class certification in this case because a class action would be wasteful, unnecessary and duplicative.

■ "The party seeking the class certification bears the burden of proof." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). *See id.* at 1086. *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 241 (6th Cir.1994). Under Rule 23, "[a]n action *may* be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition [subdivision (b) is satisfied]". Fed.R.Civ.P. 23(b) (emphasis added). *See Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 402 (6th Cir.1980) (courts "have properly recognized the permissive rather than mandatory nature of class actions"). *See also Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1377 (11th Cir. 1984). "The trial court has broad discretion in deciding whether to certify a class...." *American Medical*, 75 F.3d at 1079. *See First Fed. of Mich. v. Barrow*, 878 F.2d 912, 919 (6th Cir.1989) (recognizing "wide discretion" of trial courts in class certification controversies). Even if the prerequisites of Rule 23(a) and (b) are satisfied, the court need not certify the class. *See RAM v. Blum*, 533 F.Supp. 933, 938 (S.D.N.Y.1982) ("It is ... well settled in this Circuit [2d] that a district judge should not certify an action as a class action, even if the Rule 23(a) prerequisites and the Rule 23(b) requirement of maintainability are satisfied, unless the movant presents some additional reason for

---

10. In addition, any interest earned on the funds during the six years inures to the State of Michigan.

11. With self-funded plans, defendant is hired as a third-party administrator to process and pay claims with an employer's money. Under those plans, the employer assumes the risk of claims. Plaintiffs did not include self-funded, ERISA plans in their complaint but included them in their motion for class certification. At the hearing on March 15, 1996, this Court ruled that plaintiffs cannot now bring self-funded, ERISA plans into this case. (Hr'g Tr. at 31–32).

12. At oral argument, plaintiffs' counsel asked the Court to certify the class as offered or certify the class as offered excluding those individuals who fill out claim forms under the State agreement. (Hr'g Tr. at 50 (Mar. 14, 1996)). Counsel's latter request, in effect, asks this Court to certify a class which cannot be determined for six years from the date defendant issues notice of the agreement to the Plan's subscribers. This the Court will not do.

13. The agreement encompasses the members of the proposed class (excluding self-funded, ERISA plans). *See* n. 11, *supra.*

obtaining class certification").[14]  Exercising its discretion, this Court declines to certify the plaintiff class.  In so doing, the Court is not addressing whether the prerequisites of Rule 23 have been satisfied.  Instead, the Court determines that the interests of the class would be adequately served by the agreement between defendant and the State of Michigan rendering a class action unnecessary.

"Within judicial discretion, the well-settled rule is that a settlement should be approved if it is fair, reasonable, and adequate."  *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 623 (D.Colo.1974).[15]  *See Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).  "In assessing the fairness, reasonableness, and adequacy of a proposed settlement, the Court should 'compare the terms of the compromise with the likely rewards of litigation.'"  *Oppenlander,* 64 F.R.D. at 624.  "Courts and commentators have interpreted [Rule 23(e) ] to require courts to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'"  *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 785 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995).[16]  This requires the Court to consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, [i]t has been held proper *'to take the bird in the hand instead of a prospective flock in the bush.'"  Oppenlander,* 64 F.R.D. at 624 (emphasis added) (quotations omitted). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expen-

sive litigation with uncertain results."  *Newberg on Class Actions* § 11.50 at 11–122 (3d ed.1992).  "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.  The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *In re General Motors Corp. Pick–Up Truck Litig.,* 55 F.3d at 784 (citations omitted).

Despite the generally "risky nature" of litigation, plaintiffs' counsel told the Court at oral argument that "the cases get better and better and we [plaintiffs' counsel] get better and better at doing them".  (Hr'g Tr. at 29 (Mar. 15, 1996)).  Defense counsel indicated that complex litigation possibly followed by appeals could result if the present case is certified as a "class action".  *Id.* at 3.

In *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), a class action brought against an open-end investment fund, the Court stated the "general principle that a party must bear the 'burden of financing his own suit' ".  *Id.* at 356, 98 S.Ct. at 2392.  *See id.* at 359, 98 S.Ct. at 2393 ("the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action").  *See also Newberg* § 5.26 at 5–28 ("[a]s in all litigation, the plaintiff is obligated to pay litigation costs").

> Added costs, especially of notice to the class, are associated with the bringing of class actions in contrast to individual ones.  Therefore, should the action be unsuccessful, the class representative becomes liable for larger out-of-pocket litigation expenses. . . .  As a practical matter, counsel for the class most frequently advances all costs of class litigation on a contingency basis, so that the primary risks and expo-

---

**14.**  In *RAM,* the defendants argued that class certification was unnecessary.  The court indicated that judges of its district consistently denied class certification where the plaintiffs failed to persuade the judge that class certification was necessary.  533 F.Supp. at 938.

**15.**  This rule normally comes into play after a case is certified as a "class action."  Under Rule

23(e), a class action shall not be dismissed or compromised without the approval of the court.  The Court finds the rule instructive for present purposes.

**16.**  At oral argument, plaintiffs' counsel conceded that the Court should determine what is best for the class in ruling on the parties' class motions.  (Hr'g Tr. at 50–51 (Mar. 14, 1996)).

sure to larger litigation expenses will fall on the shoulders of class counsel, *subject to potential reimbursement from a fee award if the litigation succeeds.*

*Id.* at 5–28–29 (emphasis added).

In the present case, plaintiffs' counsel consists of five law firms and fourteen attorneys who have successfully prosecuted a number of similar cases in other states. At oral argument, plaintiffs' counsel indicated that of "twenty-fiveish" cases on which he represented a plaintiff class, "twentyish" cases settled. (Hr'g Tr. at 54 (Mar. 14, 1996)). Attorneys' fees and costs in the settled cases ranged from 4% to 33% of the award, with a majority falling between 20% and 25%. *Id.* [17]

At oral argument, Harry Iwasko, Jr., an Assistant Attorney General in Charge (Commerce Division), represented to the Court that the State's presence in the action was not for a fee but for the benefit of Michigan's citizens, and that the State was involved in the matter before the present suit was filed. *Id.* at 62. He later repeated that the State has no interest in the litigation other than one in the public benefit. *Id.* at 67. He assured the Court that defendant is not on "equal footing" with the State, and that defendant will do what Michigan, its regulator, tells defendant to do. *Id.*

In *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 834 F.2d 677 (7th Cir.1987), the Court stated:

> ... Ordinarily the named plaintiffs [in a class action] are nominees, indeed pawns, of the lawyer, and ordinarily the unnamed class members have individually too little at stake to spend time monitoring the lawyer—and their only coordination is through him.

*Id.* at 681 (internal citations omitted). *See Pattillo v. Schlesinger,* 625 F.2d 262, 265 (9th Cir.1980) ("any claims paid through the class action procedures would be reduced by the

costs of suit and attorneys' fees that plaintiffs sought. The district court and this court cannot be unaware of the fact that the principal beneficiaries of the class action would be plaintiffs' attorneys"). *See also Hahn v. Breed,* 606 F.Supp. 1557, 1563 (S.D.N.Y.1985) ("an action [should not] be permitted to proceed as a class action, despite the desirability of providing small claimants with a forum in which to seek redress, when it is unlikely to benefit anyone but the lawyers who bring it").[18] The Court recognizes that:

> the prestige attendant upon negotiating a large settlement against a corporate defendant and thereby acquiring reputations as consumer advocates may place public attorneys in a situation analogous to private counsel who hope to win large fee awards.

*Oswald v. General Motors Corp. (In re General Motors Corp. Engine Interchange Litig.),* 594 F.2d 1106, 1125 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). However, whether or not the State of Michigan gains prestige from the agreement it entered into with defendant, the plaintiff class will not "suffer" as a result. In contrast, if a fee of 20–25% is requested and approved by the Court, between $4.9 and $6.1 million will inure to the benefit of plaintiffs' counsel in this case.[19]

In a case similar to the present one, *Kamm v. California City Dev. Co.,* 509 F.2d 205 (9th Cir.1975), a class action was brought under the Interstate Land Sales Act, Securities Exchange Act and California Subdivided Lands Act to recover for fraud in a land sale scheme. Alleging a class action under Federal Rule 23(b)(3), the plaintiffs alleged that the defendants defrauded them by failing to disclose fully the nature of the property and the risks inherent in the investment plan. *Id.* at 207. The defendants moved to dismiss the class action and to strike all class allegations "on the ground that the alleged class

**17.** Last year in the Colorado co-pay case, the same plaintiffs' counsel received 33% of a $3,000,000 award or $1,000,000. (Hr'g Tr. at 7, 28 (Mar. 15, 1996)).

**18.** The Court is not suggesting that a class action would not benefit any proposed class members or that the present action was brought solely for attorneys' fees. However, where the State agree-

ment is providing monetary relief to the subscribers anyway, a class action seeking those same monies is unnecessary.

**19.** This fee is based on an award of approximately $24.4 million, *see* n. 5, *supra,* and the majority of plaintiffs' counsel's prior fees, *see* Hr'g Tr. at 54 (Mar. 14, 1996).

action is not the superior method for resolving the alleged controversy". *Id.*[20] Said motion was based primarily on the fact that a state court action had already been commenced by the California Attorney General and Real Estate Commissioner with respect to the same controversy. *Id.* Concurrently with the institution of the state court action, a proposed permanent injunction and judgment were filed. *Id.* at 208.[21]

The settlement agreement between the Attorney General, Commissioner and the defendants provided for offers of restitution of principal payments to certain purchasers. *Id.* Nothing in the agreement precluded any purchaser who did not accept an offer and execute a release from instituting action against the defendants. *Id.*[22] In upholding the district court's dismissal of the class aspect of the case, the Ninth Circuit stated:

> [s]ince the purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of settling the controversy, it seems consistent with that purpose to determine whether any administrative methods of settling the dispute exist.

*Id.* at 211. The Court then held:

> the action in state court is more than an administrative remedy. Following investigation and negotiations, the [State] officials instituted representative litigation in the [state court]. . . . the court here is not simply considering "possible administrative relief", but rather a remedy which has already been instituted.

*Id.* Despite the district court's failure to expressly articulate its reasons for dismissing the class aspect of the suit, the Court held that the following factors supported the lower court's determination:

(1) A class action would require a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work on the state level. . . . (3) Significant relief had been realized in the state action through (a) restitution to many members of the class; . . . (5) No member of the class is barred from initiating a suit on his own behalf. (6) Although the class action aspects of the case have been dismissed, appellants' action is still viable. (7) Defending a class action would prove costly to the defendants and duplicate in part the work expended over a considerable period of time in the state action.

*Id.* at 212.

All of the above-enumerated reasons support this Court's decision not to certify a plaintiff class in this case. The agreement entered into by the State and defendant covers all members of the proposed class (excluding self-funded, ERISA plans), *see* n. 11, *supra*, and provides full co-pay relief on all but de minimis claims. That arrangement is in contrast to the Colorado settlement, which also involved present plaintiffs' counsel. In Colorado, a $3,000,000 award (reduced to $2,000,000 after plaintiffs' counsel attorneys' fees and expenses) was automatically disbursed to subscribers with each receiving $24.33 despite the amount of their actual claims. (Hr'g Tr. at 8 (Mar. 15, 1996)). Under the State agreement, subscribers with large co-pay claims will receive a large rebate. Plaintiffs' counsel advocate a disbursement similar to that in the Colorado case in this action. The Court believes that the preferable disbursement method enables each subscriber to recoup actual monies wrongfully paid out. The Court recognizes

---

**20.** Fed.R.Civ.P. 23(b)(3) requires that the "court find[] that . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

**21.** In a stipulation filed by the parties, the defendants consented to the entry of judgment without admitting the allegations of the complaint. *Kamm*, 509 F.2d at 208. In the present case, plaintiffs' counsel argues that through its agreement with the State, defendant never has to admit liability in this case. If the plaintiff class is compensated for any overpayment each sub-

scriber made under the challenged practice, the Court does not see how the class would benefit by defendant's "admission" that its challenged practice violated the terms of the Plan and ERISA.

**22.** In the present case, nothing in the agreement between the State and defendant prevents an individual who does not sign and return a claim form (which contains a release) from individually instituting a proceeding for relief against defendant.

that the State agreement may not be perfect or may not be how plaintiffs' counsel would have advocated a settlement in the present case; however, based on the uncertainty of litigation, especially in complex areas of the law, such as insurance and ERISA, and the complete repayment of subscribers' claims, the Court does not believe that a class action is necessary in light of the State agreement. As a result, plaintiffs' motion for class certification is denied, while defendant's motion to dismiss class allegations is granted.

### III. Conclusion

For the reasons stated above, plaintiffs' motion for class certification is denied; defendant's motion to dismiss class allegations is granted.

