Herbert OSTROF, et al., Plaintiffs,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant.

CIV. No. PJM 99–2988.

United States District Court, D. Maryland.

May 21, 2001.

Ira Sherman, Joseph Cammarata, Chaikin & Sherman, P.C., Washington, DC, for plaintiffs.

Michael J. Budow, Budow & Boble, Bethesda, MD, Richard Alan Medway, William Compton Poling, Jr., Harry Huge, Powell Goldstein Frazer and Murphy, LLP, Evan M. Tager, Eileen Penner, David M. Gossett, Mayer, Brown & Platt, Washington, DC, Howard J. Roin, Mayer Brown & Platt, Chicago, IL, for defendant.

## OPINION

MESSITTE, District Judge.

Plaintiffs Herbert Ostrof and LaCountess B. Corbitt, on behalf of themselves and others similarly situated, have filed suit against State Farm Mutual Automobile Insurance Company. As insureds under automobile insurance policies of State Farm, they allege that, pursuant to an illegal plan of State Farm, they were denied reimbursement for medical bills and lost income under the personal injury protection (PIP) provision of the policies. Plaintiffs have filed a Motion for Class Certification, State Farm has filed a Motion to Disqualify Ostrof as Putative Class Representative, and Plaintiffs have filed a Motion to Add Class Representatives.

The Court will DENY Plaintiffs' Motion for Class Certification, which MOOTS State Farm's Motion to Disqualify Ostrof and Plaintiffs' Motion to Add Class Representatives.

I.

Section § 19–505 of the Insurance Article of the Maryland Code requires that any motor vehicle liability insurance policy issued, sold or delivered in Maryland must contain, unless waived, coverage for medical, hospital and disability benefits, including lost income. This coverage is commonly known as personal injury protection (PIP) coverage. PIP coverage provides for the payment of all reasonable and necessary medical expenses and 85% of lost income which arise out of an accident involving the use or maintenance of a motor vehicle and which are incurred within 3 years after the accident or incident. The coverage applies regardless of whether the insured was at fault in causing the accident giving rise to the medical expenses and lost income. The purpose of the coverage is to permit the speedy recovery of monies without the delays of tort litigation and to permit an injured individual to recover without regard to fault.

Plaintiffs allege that they, as well as members of their class, either purchased PIP coverage from State Farm as part of their own motor vehicle liability insurance contract or were covered under a State Farm policy which contained PIP coverage; that they and their class were involved in an accident during the use or maintenance of a motor vehicle and incurred reasonable and necessary medical expenses and/or lost income as a result of injuries sustained in the accident or incident; and that they and their class timely submitted claims to State Farm for PIP benefits under the aforesaid contracts which State Farm wrongfully denied in whole or part.

Plaintiffs contend that State Farm deliberately engaged in a course of deceptive conduct as to them and each member of their class. State Farm, they say, urged them to accept PIP coverage, suggesting it would evaluate PIP claims fairly objectively, thor-

oughly, promptly and in accordance with Maryland law, but at the same time concealed from them the existence of a "common and fraudulent plan, scheme or practice" that made each of those representations false. Among State Farm's allegedly deceptive and unfair practices were (1) the use of computer programs with databases that arbitrarily determined that the bills of Plaintiffs and the class exceeded hypothetical amounts charged by hypothetical providers in hypothetical geographical regions; (2) the engagement of consultants who consistently submitted reports resulting in a denial of benefits to Plaintiffs and the class; and (3) to the extent that State Farm occasionally required Plaintiffs or members of the class to submit to medical examinations, the engagement of physicians who routinely provided reports which State Farm used to deny payment in whole or part of Plaintiffs' and the class's medical bills. In all these instances, State Farm was allegedly aware of the inadequacy and lack of objectivity of its investigation and review of the PIP claims.

As of October 13, 1998, Plaintiff Herbert Ostrof had a motor vehicle liability insurance contract with State Farm which included PIP coverage in the amount of $2,500.00. On that date he was injured in a motor vehicle accident, incurring medical bills in consequence. He alleges that he submitted his claims for PIP benefits to State Farm in timely fashion but that State Farm refused to pay at least $87.00 of medical bills due to certain of his health care providers.

As of May 26, 1996, Plaintiff LaCountess B. Corbitt's father had a PIP policy with State Farm in the amount of $10,000.00. On that date she was injured in a motor vehicle accident, incurring medical bills in caring for her injuries as well as losing income as a result. Corbitt alleges that after timely submitting her claim for PIP benefits, State Farm refused to pay her medical bills and lost income benefits totaling at least $5,984.00.

Plaintiffs bring this action on behalf of themselves and ask the Court to certify the following class:

All individuals who were injured in an accident or incident arising out of the ownership, maintenance, or use of a motor vehicle, who (a) timely and properly submitted in accordance with State Farm's insurance policies and/or Maryland law, a claim for personal injury protection and/or medical payments benefits to Defendant State Farm, under a motor vehicle liability insurance policy issued by State Farm and governed by Maryland law, which claim was denied, in whole or part, on or after August 18, 1996, based on use of computerized fee review schedules or medical record reviews (conducted by consultants retained and paid by State Farm), and who (b) received or were tendered an amount of benefits which was less than the stated PIP policy limits and the amount claimed.[1]

They also ask for certification of a subclass:

"All individuals encompassed in the 'post-policy purchase loss' class, who also, from August 18, 1996 to the date of final judgment, purchased a State Farm automobile insurance policy which contained PIP coverage and which was governed by Maryland law."

Plaintiffs proceed pursuant to Fed.R.Civ.P. 23.[2]

---

**1.** This is the class as defined by Plaintiffs in their Reply to Defendant's Opposition to their Motion for Class Certification. The class proposed in the Plaintiffs' Complaint, however, is far broader and includes any individual who submitted a claim for PIP benefits to State Farm, governed by Maryland law, whose claim was denied in whole or part after August 18, 1989. After State Farm pointed out in its Opposition to the Motion that the proposed class might include claimants whose claims were barred by limitations, or who were never in an accident or were not injured at all, or whose policies had expired or who had failed to submit PIP applications or other re-

quired documentation on a timely basis, Plaintiffs redefined the class in their Reply.

The Court notes that amendments to complaints ordinarily are not accomplished by a party's mere declaration to that effect in the course of a reply brief and that the proper vehicle for effecting such an amendment is by means of an amended complaint. *See* Fed.R.Civ.P. 15(a); Local Rule 103.6. However, inasmuch as the Court is denying class certification in any case, as a matter of judicial economy it will assume that the Complaint has been appropriately amended.

**2.** The Complaint, originally filed in the Circuit Court for Prince George's County and removed

## II.

A) All class actions in federal court must satisfy the following conditions of Fed. R.Civ.P. 23(a):

1) *Numerosity:* The claim must be so numerous that joinder of all individual members is "impracticable" (23(a)(1));

2) *Commonality:* There must be questions of law and fact common to the class (23(a)(2));

3) *Typicality:* The claims of the class representatives must be typical of the claims of the class (23(a)(3)); and

4) *Adequacy of Representation:* The proposed class representatives must be able to fairly and adequately protect the interests of the class members (23(a)(4)).

In addition to meeting the requirements of Rule 23(a), a proposed class representative must meet one of the several grounds for maintaining the cause of action set out in Fed.R.Civ.P. 23(b). Ostrof and Corbitt have opted to proceed principally under 23(b)(3), which requires that they demonstrate that questions of law or fact common to the class "predominate" over questions affecting the individual members and that, on balance, a class action would be "superior" to other methods available for adjudicating the controversy.[3]

B) Ostrof and Corbitt maintain that they satisfy all Rule 23's prerequisites.

As for numerosity, they allege a class of "hundreds if not thousands" of State Farm insureds who applied for PIP benefits under insurance policies issued by State Farm, the joinder of whose individual lawsuits would be difficult and inconvenient.

As for commonality, they cite the "common course of deceptive conduct" on the part of State Farm as well as several characteristics they say they share with the proposed class, namely (a) PIP contracts and coverage; (b) the occurrence of accidents or incidents; (c) timely submission of claims; (d) the failure of State Farm to undertake an objective review of their claims, and the arbitrary denial or reduction of those claims based on computer analyses; and (e) fraudulent representations by State Farm that claims would be paid regardless of fault based on an objective review in compliance with law, together with concealment of this common scheme or plan to wrongfully deny or reduce the PIP claims. Additional common questions of law are said to pertain to the nature and extent of a fiduciary duty State Farm purportedly owed to Plaintiffs under Maryland law to process PIP claims fairly, promptly, and in accordance with law.

As for the typicality of their claims, Plaintiffs argue that they share the common characteristics of the class. Again, they, as well as others, are PIP insureds with State Farm, were injured in accidents or incidents, submitted timely claims, and were denied payments based on the same wrongful course of conduct by State Farm, *i.e.* its "practice of arbitrarily reducing or denying PIP claims

to this Court, actually seeks certification pursuant to Maryland Rule of Procedure 2–231. Since the Maryland rule is *in pari materia* with Federal Rule of Civil Procedure 23, and since the parties have argued the case in terms of the federal rule, the Court's analysis will proceed on the basis of the federal rule.

3. Plaintiffs also argue, pursuant to Fed.R.Civ.P. 23(b)(1)(A), that there is a risk of prejudice from separate actions establishing incompatible standards of conduct for State Farm and that adjudications with respect to individual members of the class might be dispositive of the interests of other members not parties to these adjudications. Plaintiffs, however, do not appear to press this argument with particular vigor and for good reason. As State Farm points out, the present suit seeks only money damages, whereas the general practice is to certify a Rule 23(b)(1)(A) action only in cases seeking injunctive or declaratory relief. *See, e.g., In Re Dennis Greenman Sec. Litig.,* 829 F.2d 1539, 1544 (11th Cir.1987). Because only money damages are sought, the Court sees no risk that State Farm will be subject to inconsistent standards of conduct such as might affect, for example, a party maintaining an alleged nuisance who is subject to individual litigations of several riparian owners. *See* Advisory Committee Notes to Fed.R.Civ.P. 23, 1996 Amendment, Subdivision (b)(1) Clause (A). The only possibility is that State Farm might be found liable in this case and not in another (or vice versa). However, the later judgment would not be incompatible with the earlier judgment because, by paying the earlier (or later) judgment, State Farm could act compatibly with both. *See Zimmerman v. Bell,* 800 F.2d 386, 389 (4th Cir. 1986).

by using computer programs and hired-gun consultants."

As for the adequacy of representation, counsel for Plaintiffs assume there is no challenge to their own qualifications to serve as class counsel and focus instead on the adequacy of the proposed class representatives, that is, on the mutuality of their interests and those of the proposed class members. Because of their "common and obvious interest," Plaintiffs submit that they will actively seek vindication of the class members' rights. They assert that their interests are not antagonistic to those of the class because their interests are held in common, because they have no conflict of interest ("Defendant," say Plaintiffs, "cannot produce any evidence showing a conflict of interest" on their part), because they suffer from no incapacity, and because there are no defenses unique or personal to them.

Plaintiffs also argue that their case satisfies both the predominance and superiority requirements of Rule 23(b)(3), the former by reason of the "overriding common liability issues in this case," the latter primarily because of the relatively easy manageability of the proceeding.

C) State Farm opposes Plaintiffs' allegations in nearly every respect. It disputes that there is a commonality of law or fact issues shared by members of the proposed class, that the claims of the putative class representatives are typical of those of the proposed members, or that the putative representatives can adequately represent the class. As far as Fed.R.Civ.P. 23(b)(3) is concerned, State Farm denies that common issues predominate or that, on balance, class certification would be superior to other methods for the fair and efficient adjudication of the controversy.

Above all, State Farm denies that it has engaged in a common scheme of deception relative to the processing of PIP claims. While it concedes that PIP insureds in Maryland are entitled to recover reasonable expenses for necessary treatment of accident-related injuries, it argues that in practice a significant number of such claimants seek reimbursement for fees that are either not accident-related or, if they are, that are not necessary or reasonable. Accordingly, State Farm believes that fairness entitles it to employ a variety of measures to verify those claims, an effort it contends that actually benefits insureds by keeping their premiums low. Among the methods State Farm has used in this regard are individualized review of claims by a claims representative (and sometimes by a claims supervisor), followed by computer reviews, utilization reviews, and/or medical examinations, all designed to check the claimed costs against usual and customary costs for the claimed costs in the locality where the service is rendered. Computer reviews involve the use of a database which compiles information regarding fees provided for a wide array of services in a particular geographic area. By comparing a proposed charge with the customary charge for the same service in the given area as established by the database, State Farm contends it is able to determine how the charge measures up. If, under all the circumstances, the charge is deemed unreasonable, reimbursement for the PIP claim is denied. During the time that State Farm used the computerized review method in Maryland,[4] its computer program flagged any charges above the 85th percentile of charges for the same service in the particular area where it was rendered and then—subject to giving the requesting health care provider an opportunity to justify the higher fee—conditionally reduced the fee to the maximum customary charge. Utilization reviews (presumably what Plaintiffs mean by "medical records reviews") consist of reviews by a firm or

---

4. State Farm indicates that it stopped using computer fee review programs in March 2000 for reasons unrelated to the filing of this lawsuit. It concedes, however, that shortly after, in April 2000, the Maryland Insurance Administration (MIA) issued a bulletin·addressing the issue of computer fee review programs. In it, the MIA stated that insurance companies ought not to rely on such programs as the sole method of assessing the reasonableness of fees but pointed out that "in and of itself, * * * it is not unlawful for a PIP insurer to apply and utilize a fee review schedule" generated by computer programs. State Farm contends that it has never relied solely on computer fee reviews to determine whether the charges are reasonable but has used it simply as one of several steps in evaluating an individual's medical claims.

firms of medical professionals with past experience in the evaluation of personal injury claims. In conducting their reviews, the reviewers consider the medical propriety of prescribed treatment as a cross-check against possibly unnecessary services by fee-for-service health care providers. Medical examinations by private practice physicians are conducted to verify the insured's physical condition, the causal relationship between automobile accidents and injuries, and the propriety of the prescribed treatment. Rejecting the characterization of these methods as part of a deceptive course of conduct, State Farm defends them as wholly appropriate means to prevent unreasonable claims, whether fraudulent or merely unnecessary or excessive.

State Farm also challenges the proposition that the putative class shares any commonality of facts in regard to their PIP claims. Each claimant's situation, State Farm argues, is unique and would require individualized proof of an erroneous coverage determination as well as proof of actual injury resulting from that determination. Thus, State Farm suggests that at a minimum each claimant would have to prove that:

- he or she was covered under a State Farm PIP policy;

- he or she was involved in a covered accident that resulted in bodily injury and/or lost wages;

- the treatment received for any injury was "necessary";

- the charges for necessary treatment were "reasonable";

- the claimant adequately documented his or her claim and complied with reasonable requests for medical examinations;

- State Farm denied coverage for all or part of that necessary treatment or paid less than those reasonable charges;

- the amount of the bill submitted by the claimant was within policy limits; and

- the claimant suffered damage from State Farm's incorrect coverage decision, *i.e.* he or she was actually required to pay the rejected bills.[5]

Additionally, insofar as Plaintiffs and the proposed class are propounding a theory of recovery sounding in fraud, State Farm argues that each claimant would have to show that he or she reasonably relied upon a knowing misrepresentation by State Farm about the extent of its PIP coverage.

Furthermore, based on the damages Plaintiffs have claimed in their pleadings, inherently individualized inquiries pertaining to damages would have to include:

- Whether the individual claimant incurred "additional losses and damages in pursuit of" PIP damages;

- Whether the individual claimant suffer "consequential damages" due to "emotional stress, concern, and worry;" and

- Whether the individual claimant is entitled to punitive damages.

State Farm continues: Assuming that the proposed class shares a common first set of issues, individualized hearings on each class member's claims would still be required. For example, to the extent that a claimant might be seeking reimbursement for multiple injuries that occurred close in time (*e.g.* Proposed Class Plaintiff Corbitt was in two accidents within 8 days' time), the claimant would have to demonstrate that a distinct accident caused a distinct injury entitling the claimant to a distinct quantum of medical treatment and distinct payment. It would also be necessary to know whether the claimant submitted a claim that was in fact underpaid and, if so, whether the claimant was himself or herself subject to a claim for payment by the health care provider. Further, assuming State Farm owed the class a fiduciary duty to process claims fairly and promptly, it would be necessary to determine on an individualized basis whether that duty was breached by the particular method used and whether the breach resulted in harm to

---

**5.** A claimant would still be entitled to PIP benefits even if he or she had also recovered collateral medical or hospital benefits. *Dutta v. State Farm Ins. Co.,* 363 Md. 540, 769 A.2d 948 (2001). But the Court understands State Farm to be referring to cases in which no one would have paid the bill; the health care provider would simply have withdrawn any claim to the questioned amount.

the claimant. If the utilization review method caused the breach, for example, the trier of fact would have to determine whether the physician who reviewed the claimant's file acted properly and whether the allegedly improper review actually caused a claimant to receive less compensation than he or she should have received. Even assuming the existence of a common scheme to wrongfully deny or reduce claims, each individual claimant would still have to prove that in his or her own case the claim was in fact wrongfully denied or reduced.

State Farm also contends that the proposed Class Plaintiffs have failed to prove that their claims and defenses are typical or that they would fairly and adequately represent the class. Ostrof, who is the subject of a separate motion to disqualify, has apparently never had to pay his health care providers the amount he was denied. Thus State Farm indicates that it paid a total of $1,905.76 either to Ostrof or his health care providers and that only three of his claimed reimbursements for medical expenses were reduced, and then by a total of only $87.24. This came after a review of Ostrof's claims file, including his medical records and billing information, and a comparison of the expenses with a medical research database reporting the prevailing fees for the claimed services in the relevant geographic region. State Farm, moreover, notified Ostrof's medical providers in writing of the adjustments it proposed to their bills and explained the rationale it had used to determine the appropriate amounts, advising that if the providers disagreed with the adjustment, they should submit additional documentation. Since the providers submitted no such documentation nor did they sue Ostrof for their fees, State Farm claims he has suffered no damages and thus lacks standing to make a claim.

As for proposed Class Plaintiff Corbitt, State Farms argues that it also has defenses unique to her that would be atypical of those that might be raised against other members of the class. It points out, for example, that Corbitt was involved in an automobile accident 8 days prior to the accident for which she seeks recovery here, making it uncertain which accident caused which injury. State Farm also notes Corbitt's deposition testimony which reveals that she may have obtained a double recovery for lost wages for the period of May 25 to June 8, 1996, which would subject her to a unique defense of unclean hands. It suggests that there is a considerable likelihood that Corbitt's physical therapist may have submitted duplicative bills seeking double payment for the same treatment applied to Corbitt following her two accidents. Further, since Corbitt submitted a PIP claim under her father's insurance policy, she is an improbable designee to assert on her own, much less on behalf of others, any breach of contract or fraud claim.

State Farm suggests that both Ostrof or Corbitt lack the most rudimentary knowledge or understanding of their lawsuit. Ostrof, for example, could not remember if he had ever read the portion of his State Farm policy dealing with PIP benefits nor could he remember if he had read the Complaint in this suit. Corbitt could not recall who may have made representations to her or when they might have been made. Both were uncertain as to what damages they were claiming. When asked whether she had filed tax returns for 1996, presumably a relevant inquiry inasmuch as the lost wage claims she seeks in this case occurred in that year, Corbitt asserted a privilege under the Fifth Amendment and refused to answer.

Finally, assuming Plaintiffs have met each of Rule 23(a)'s requirements, including that of commonality, State Farm disputes that they can satisfy Rule 23(b)(3)'s requirements that common issues "predominate" and that class certification be "superior" to other methods for the fair and efficient adjudication of the controversy. While it well may be efficient to eliminate the requirement that members of the Plaintiff Class adduce evidence in support of each element of their claims, State Farm says the consequence would be to deprive it of the opportunity to present individualized evidence and raise individualized defenses. Any economy of time, effort and expense achieved by proceeding as class action in this case, would necessarily sacrifice procedural fairness in derogation of State Farm's due process rights. State Farm submits the proposed Class Plaintiffs

have failed to present workable plan for managing this case, belying any assertion that this would be a relatively easy case to manage.

### III.

■ It is "well settled in the Fourth Circuit that the proponent of class certification has the burden of establishing the right to such certification under Rule 23." *Bostron v. Apfel,* 182 F.R.D. 188, 192, n. 6 (D.Md.1998). There is no presumption in favor of such certification as "would operate to remove the burden of establishing [a] right to class action treatment from the plaintiff * * * and impose it on the defendant or defendants," *Windham v. American Brands Inc.,* 565 F.2d 59, 65, n. 6 (4th Cir.1977) *(en banc). See also In Re A.H. Robins Co.,* 880 F.2d 709, 728 (4th Cir.1989) abrogated on other grounds by *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Plaintiffs, therefore, have the burden of establishing the four elements of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation. *See, e.g., Amchem,* 521 U.S. at 613–14, 117 S.Ct. 2231. The Court considers these elements first. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Only if Plaintiffs can establish these is the Court obliged to consider the requirements of Rule 23(b). *Amchem,* 521 U.S. at 614, 117 S.Ct. 2231.

A) Numerosity is not contested by State Farm and the Court will take it as established.

■ B) As for commonality, the Fourth Circuit has held "certification is proper only when a determinative critical issue overshadows all other issues." *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990). "[Q]uestion[s] [that are] in no way dispositive and [which] simply propel the action into a posture where judicial scrutiny is necessary for just adjudication" are not sufficient under Rule 23(a)(2). *Id.,* 916 F.2d at 145. "The disparate nature of the [proposed class member's] claims precludes class treatment." *Broussard v. Meineke Discount Muffler Shops Inc.,* 155 F.3d

331, 344 (4th Cir.1998). *See also Peoples v. Wendover Funding Inc.,* 179 F.R.D. 492, 498 (D.Md.1998) ("a representative plaintiff cannot establish commonality under [Rule 23(a)(2) ] if the court must investigate each plaintiff's individual claim.")

As set forth in their Reply to State Farm's Opposition to the Motion to Certify, Plaintiffs propose what they take to be a simple scheme for the trial of this case:

If a jury finds that it is wrong to reduce claims [based on computer programs and record reviews], all that will have to be determined at that point is how many claims in the relevant time period were in fact reduced on these bases, and what the amounts of the reductions were. Then, if Defendant cannot produce any additional evidence, obtained *prior* to the decision to deny benefits, which supports those reductions, *i.e.* in order to meet *its* burden of objectively *rebutting* the presumptive reasonableness and necessity of each PIP claim,—then Defendant will simply have to pay whatever the amount of the reduction was on each claim. At that point, having been found to fall short, at the time of its claim decision, of meeting its burden to rebut the presumptive reasonableness and necessity of each relevant PIP claim, Defendant will *not* be able to reopen each case and conduct full blown individual mini-trials on the issue of reasonableness and necessity. (Emphasis in original; footnote omitted.)

But, as State Farm emphasizes over and again, the PIP statute requires only that an insurer pay up to the limits of the insured's policy "the reasonable and necessary expenses [for specified medical services] that arise from a motor vehicle accident and that are incurred within 3 years after the accident," *Maryland Code Annotated [Insurance],* § 19–505(b)(2)(i), and "85% of income lost" as a result of such accident, *Id.,* Section 19–505(b)(2)(ii). Merely to recite the terms of the statute, in the Court's view, is to demonstrate which side has the better part of this argument. Quite simply, it is impossible to avoid the conclusion urged by State Farm that the case is rife with individualized inquiries. Fundamental questions necessari-

ly apply to each and every claimant. Was there in fact an accident? Was the claimant injured? Was the event adequately documented? Was review of the claim based on computer review alone? Utilization review alone? Medical review alone? On some combination of these? Did the claimant have a pre-existing medical condition? Was the treatment prescribed for the claimant necessary? Was it excessive? Were the health care provider's bills reasonable? Was there duplication in billing? Was fraud involved? Did the individual claimant actually have to pay the amount State Farm denied? Has the claimant been sued for the fee? And so the litany proceeds. Common sense, no less than due process, makes such inquiries relevant. The Court is unable to find in this case the commonality that Rule 23(a)(2) demands before a class can be certified.

■ Were that not enough, Proposed Class Plaintiffs have failed to show that their claims are typical of the proposed class. Generally speaking, typicality involves consideration of the similarity between proposed class plaintiffs' legal and remedial theories and those of the persons they purport to represent. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir.1997). The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co.*, 457 U.S. at 156, 102 S.Ct. 2364 (1982). Accordingly, the party seeking to represent the class must be able to prove actual injury to him or herself, as opposed to other members of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Although it is not necessary that all class members suffer the same injury as the class representatives, *see, e.g., Rosario v. Livaditis*, 963 F.2d 1013, 1018

(7th Cir.1992), where a purported class representative is subject to a unique defense that cannot be asserted against other members of the class (other than minor discrepancies), typicality may be lacking. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2nd Cir.1990).

■ The Court has already referred to proposed Class Plaintiff Ostrof's situation. He, it appears, is either not a member of the proposed class or may be subject to a unique defense. It is uncontested that he has never had to pay his health care providers the amounts that were denied him. No suits for the fees are pending against him nor, apparently, are any such suits imminent. *See McGill v. State. Farm Mut. Auto. Ins. Co.*, 207 Mich.App. 402, 526 N.W.2d 12, 14 (1994)(finding proposed class plaintiff's claims atypical: "[There is] no evidence that Plaintiffs have suffered injury as a result of Defendants' partial payment of their medical bills; nor is any injury threatened.")

Defenses unique to Plaintiff Corbitt have also been noted. Since she was involved in two automobile accidents only eight days apart, she would need to prove which accident or incident gave rise to what quantum of injury. Furthermore, at least colorably, it appears that she may have submitted duplicate bills to State Farm asking for payment for a single treatment rendered in consequence of the two accidents and possibly collected twice for the same lost wages. Additionally, since her PIP claim was submitted under her father's insurance policy, it is clear that she could not assert a breach of contract claim nor could she have been the victim of any fraudulent misrepresentation regarding the extent of State Farm's PIP coverage.[6]

---

6. Presumably in recognition of the fragility of their claims to be certified as class representatives, Plaintiffs at oral argument handed up a motion seeking to add four new class representatives, all described as individuals who would vigorously pursue the action in the interest of the class. Whether or not a motion to add class representatives is premature when a class has not yet come into existence, *see, e.g., Dietrich v. Bauer*, 76 F.Supp.2d 312, 326 (S.D.N.Y.1999), State Farm argues persuasively that adding class plaintiffs at this stage would be untimely and would cause undue delay, even if typicality and the adequacy of the current Plaintiffs to serve as Class Plaintiffs were the Court's only concerns. As with Plaintiffs Ostrof and Corbitt, State Farm would also be entitled to determine whether the claims of the parties proposed to be added would be typical of the class and whether they would be adequate representatives. Discovery, however, has closed, briefs have been filed, and the case has been argued. Adding further named plaintiffs at this time would therefore clearly be prejudicial to State Farm. *See In Re Norplant Contraceptive Products Liab. Litig.*, 163 F.R.D. 258, 260

■ The final prerequisite under Rule 23(a) is that the persons representing the proposed class must be able "fairly and adequately to protect the interests" of all members of the class. Representation is deemed "adequate" if the attorneys representing the class are qualified and competent, *see In Re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18 (2nd Cir.1986), and the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

Since State Farm raises no challenge to the qualifications and competency of proposed class counsel, the Court need not address that matter.

As for the proposed class representatives, courts have disagreed over whether knowledge on their part or lack of same is relevant in determining the adequacy of their representation of class interests. Compare *Linder v. Litton Sys. Inc.*, 81 F.R.D. 14, 20–22 (D.Md.1978) (plaintiff deemed inadequate class representative because he knew nothing about the policies and practice he was challenging in the lawsuit), with *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 170 (D.Mass.1989) (class representatives' memory lapses at deposition did not render them inadequate). At best, Plaintiffs' claims of adequacy in this case begin less than auspiciously. Both have displayed limited knowledge and understanding of this lawsuit. Ostrof could not remember reading the Complaint, nor which of his bills in question had been paid in full or part. Corbitt did not know how much money she was claiming for lost wages, which injury she was being treated for, or what medication she was taking.

But apart from that, there is an overlap between the requirement of adequacy of representation and the requirement of typicality. *Gen. Tel. Co.*, 457 U.S. at 157, 102 S.Ct. 2364. As to both requirements, if the proposed class representative's claim is subject to a unique defense, the court may refuse to certify as class representative a plaintiff subject

to that defense. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Since Ostrof, as previously noted, would be subject to the defense that he has in fact not been required to pay the amount denied him by State Farm and since Corbitt would be subject to distinguishing between the consequences of overlapping injuries as well as possible double billing in connection with both wage and medical expense claims, their quest for class representative designation is highly problematic. And this, of course, assumes the other requirements of Rule 23(a) have otherwise been met, which they have not.

Then there is the matter of Rule 23(b). Strictly speaking, if the proposed class fails to satisfy Rule 23(a)(2)'s requirement that common issues exist, the Court need not consider Rule 23(b)'s requirements. *See Broussard*, 155 F.3d at 337, n. 3. But lest there be any doubt, it is also clear that the latter are also unfulfilled here. In determining whether common issues "predominate," the court first identifies the substantive issues raised by the cause of action and the applicable defenses, then inquires into the proof relevant to each issue. *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir.1981). What matters is not the number of common issues but their significance. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999). Notably, "the predominance criterion is far more demanding" than Rule 23(a)'s commonality requirement. *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231.

The Court has already remarked upon the extent to which the claims of the members of the putative class in this case would involve distinct inquiries leading to distinct conclusions as to each member. Since the Court has found insufficient commonality of issues for Rule 23(a)(2) purposes, *a fortiori* it concludes that such issues do not predominate in the case for 23(b)(3) purposes. *See, e.g., Kohn v. Am. Hous. Found., Inc.*, 178 F.R.D. 536, 541 (D.Colo.1998) (common legal theories and claims did not predominate where individual inquiries were necessary). *See*

(E.D.Tex.1995) ("the addition of [more] plaintiffs at this late date would unfairly prejudice the

defendants.").

*also Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 220 (D.Md.1997); *Zimmerman,* 800 F.2d at 390 (4th Cir.1986) (quoting 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1788 at 526 (2nd ed. 1986)) (The possibility of such individualized determinations would impose an excessive managerial burden upon the district court * * * "When individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified.")

■ As for the requirement of Rule 23(b)(3) that the class action device be superior to individual lawsuits for resolving the dispute, the Rule lists four factors bearing on the determination, a list not meant to be exhaustive. Of the four factors set out in the Rule, two are of particular relevance here: The extent and nature of any litigation concerning the controversy already commenced by or against members of the class [Fed. R.Civ.P. 23(b)(3)(B) ] and the difficulties likely to be encountered in the management of a class suit [Fed.R.Civ.P. 23(b)(3)(D) ]. Beyond the factors mentioned in the Rule, a court may also consider such factors as the availability of alternative remedies that would be superior to a class action, including relief through administrative proceedings. *See Brown v. Blue Cross and Blue Shield of Michigan, Inc.,* 167 F.R.D. 40, 43 (E.D.Mich. 1996).

Plaintiffs' case is contraindicated based on each of these factors.

As to related litigation: An attorney whose firm has represented State Farm in a number of lawsuits in Maryland involving PIP coverage, some of which have involved the use of a computer database, has submitted an affidavit indicating that State Farm has often succeeded in defending such suits. Citing two cases from the District Court of Maryland for Montgomery County, for example, the affidavit indicates that in both cases the judges ruled in favor of State Farm, agreeing that medical providers' bills were excessive and that State Farm, with the assistance of information provided by its Medicode review, properly reduced them. Cases from other Maryland courts have been cited in which

medical treatment was found to be unnecessary and where reductions in the claims by State Farm were upheld. Several more cases of this type are said to have been tried in Maryland. The fact that these individual suits have been prosecuted highlights yet again the core problem with Plaintiffs' request that this case proceed as a class action. PIP claims tend to be of a highly individualized nature. Individual suits may therefore be the preferred way to proceed. *See Hewlett,* 185 F.R.D. at 211, 221 ("[T]he existence of [non-class] litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed and even may consider them preferable to a class action"). This also has implications with respect to the manageability factor. Numerous individual issues as compared to class issues obviously make a case much more difficult to manage.

Ultimately Plaintiffs have failed to convince the Court why this case should be treated any differently from others where the necessity and reasonableness of medical treatment has been at issue. Consistently in such cases courts have found individualized inquiries to predominate and have declined certification. *See, e.g., Ross–Randolph v. Allstate Ins. Co.,* No. DKC 99–3344 at pp. 17–18 (D.Md. May 11, 2001) (Plaintiffs sought to certify class against insurer for failure to make PIP payments; " . . . Plaintiffs cite no authority, and the court has found none, that deals with certification of a class of plaintiffs whose action is based on an insurer's failure to undertake a 'reasonable and necessary' analysis as to each member's individual claims, and in which the court found certification appropriate"); *Ammons v. Am. Family Mut. Ins. Co.,* 897 P.2d 860, 863 (Colo.Ct. App.1995) (holding class certification inappropriate in suit to recoup "reasonable and necessary" transportation expenses incurred for treatment of injuries arising from automobile accidents because "what is 'reasonable and necessary' may depend on the particular circumstances of individual cases"); *Ralph v. Am. Family Mut. Ins. Co.,* 835 S.W.2d 522, 524 (Mo.Ct.App.1992) (same); *McDonald v. Prudential Ins. Co.,* No. 95–C–5186, 1999 WL 102796, at *4 (N.D.Ill. Feb.19, 1999)

(refusing to certify a class action against insurer where "reasonableness" and "medical necessity" would have to be determined on case-by-case basis); *Hylaszek v. Aetna Life Ins. Co.*, No. 94–C–5961, 1998 WL 381064, at *4 (N.D.Ill. July 1, 1998) (commonality and manageability not satisfied where court would be required "to conduct a series of mini-trials to examine numerous factual issues, including * * * the medical necessity of [particular] treatment in each individual case"); *Scott v. Ambassador Ins. Co.*, 100 Ill.App.3d 184, 55 Ill.Dec. 627, 426 N.E.2d 952, 954 (1981) ("adjudication of the named plaintiffs' claim [sic] would not establish a right to recovery in any of the other purported class members" because of "necessity of making individual factual determinations as to whether each class member was 'legally entitled' to damages from an uninsured motorist for bodily injuries sustained"); *Fietsam v. Connecticut Gen. Life Ins. Co.*, No. 93–C–916, 1994 WL 323313, at *6 (N.D.Ill. June 27, 1994).

Finally, there is the matter of the availability of alternative remedies, particularly in a case such as this where a remedy is available from an administrative agency which has expertise in a relevant field, such as the insurance industry. In such cases, allowing for pursuit of claims in the administrative forum is often deemed superior to aggregating all the claims into a class action suit. *Cf. Allen v. State Farm Fire and Cas. Co.*, 59 F.Supp.2d 1217, 1224–27 (S.D.Ala. 1999) (dismissing proposed class action on primary jurisdiction grounds because evaluation of appropriateness of insurance deductible "requires familiarity with the insurance industry and the variety of factors analyzed in deciding a deductible—matters within the Commissioner's expertise," *Id.* at 1227). It appears that for at least two years the Maryland Insurance Administration (MIA) has been examining the appropriateness of the use of computer programs by insurers to aid in the review of medical claims, an inquiry in which State Farm and other insurers have participated. In particular, this examination has involved investigation of cases of individuals whose PIP claims were reviewed and

rejected by various companies using computerized fee review programs. Not only does the MIA have the authority to order individualized remedies if the circumstances warrant; it has apparently indicated that it will exercise that authority. But if that is so, it is clear that adding a class action overlay in federal court makes little sense. *See Pattillo v. Schlesinger*, 625 F.2d 262, 265 (9th Cir. 1980) (rejecting class certification in favor of administrative procedures and noting advantages of eliminating costs and attorneys fees associated with class litigation). In any event, as a supplement to administrative proceedings, the small claims courts of the Maryland state system appear to be perfectly adequate venues to consider the claims of State Farm's PIP insureds if and when disputes arise over whether they are properly payable.

For all these reasons, the Motion for Class Certification will be DENIED.

A separate Order implementing this Opinion will be issued.[7]

---

**7.** This decision MOOTS State Farm's Motion to Disqualify Ostrof as Putative Class Representa-

tive as well as Plaintiffs' Motion to Add Class Representatives.