# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILMINGTON PAIN &
REHABILITATION CENTER, P.A.,
on behalf of itself and all others similarly
situated,

        Plaintiff,

        v.

USAA GENERAL INDEMNITY
INSURANCE COMPANY and
GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,

        Defendants.

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

C.A. No. N15C-06-218 JRJ CCLD

## OPINION

Date Submitted: September 7, 2017
Date Decided: October 17, 2017

*Upon Wilmington Pain & Rehabilitation Center, P.A.'s Motion for Class Certification*: **DENIED**.

John S. Spadaro, Esquire, John Sheehan Spadaro, LLC, Smyrna, DE, Attorney for Plaintiff.

Sidney S. Liebesman, Esquire, Lisa Zwally Brown, Esquire, Montgomery McCracken Walker & Rhoads LLP, Wilmington, DE, Jay Williams, Esquire (*pro hac vice*) (argued), Paula M. Ketcham, Esquire (*pro hac vice*), Schiff Hardin LLP, Chicago, IL, Attorneys for Defendants.

**Jurden, P.J.**

# I. INTRODUCTION

Wilmington Pain & Rehabilitation Center, P.A. ("WPRC") brings this putative class action against USAA General Indemnity Insurance Company and Garrison Property and Casualty Insurance Company ("USAA"), alleging that USAA has failed to pay reasonable medical expenses submitted by WPRC and other Delaware health care providers under their patients' Personal Injury Protection ("PIP") policies in violation of 21 *Del. C.* § 2118(a).[1] Now before the Court is WPRC's Motion for Class Certification ("Motion").[2] For the following reasons, WPRC's Motion is **DENIED**.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Parties and the Delaware PIP Statute

WPRC is a Delaware professional association and outpatient care facility that specializes in physical medicine and rehabilitation.[3] It regularly treats Delaware residents for injuries suffered in automobile collisions.[4] USAA is a Texas corporation engaged in the business of insurance.[5] It regularly sells auto insurance in the State of Delaware.[6]

---

[1] WPRC's Amended Complaint ("Am. Compl.") ¶ 1 (Trans. ID. 58206331).
[2] WPRC's Opening Brief in Support of Motion for Class Certification ("WPRC's Opening Br.") (Trans. ID. 59732453); WPRC's Reply Brief in Support of Motion for Class Certification ("WPRC's Reply Br.") (Trans. ID. 60652543).
[3] WPRC's Opening Br. at 1.
[4] *Id.*
[5] *Id.* at 2.
[6] *Id.*

Title 21, Section 2118 of Delaware Code, commonly referred to as the "Delaware PIP statute," requires that every owner of a motor vehicle registered in Delaware must maintain specified insurance with specified minimum coverage.[7] This includes PIP coverage, defined as "[c]ompensation to injured persons for *reasonable and necessary* expenses incurred within two years from the date of the accident" for medical and other related expenses.[8]

**B. USAA's Practice in Paying PIP Claims**

When a PIP policyholder submits a claim to USAA, USAA utilizes a computerized bill review system, which it calls "Reasonable Fee Methodology" ("RF System"), to determine the reasonableness of medical expenses.[9] The first step of the RF System is "benchmarking." The benchmarking step relies on a database compiled by the U.S. Department of Health and Human Services/Centers for Medicare and Medicaid Services ("CMS").[10] This database contains 1 billion records of charges billed by health care providers across the country and submitted to CMS.[11] The RF System organizes those charges in the CMS database by CPT Code, geozip, and time period.[12] It then lines them from lowest to highest and

---

[7] 21 *Del. C.* § 2118(a).
[8] *Id.* (emphasis added).
[9] USAA's Brief in Opposition to Plaintiff's Motion for Class Certification ("USAA's Opp'n Br.") (Trans. ID. 60599408) at 9.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 10.

3

divides them into percentiles.[13] USAA uses the 80th percentile of those charges as a benchmark, which is the amount at which at least 80% of the charges are equal to or lower than. If a claim submitted by a health care provider is not higher than the 80th percentile, it would be deemed reasonable.[14]

The second step of the RF System involves a "rounding up" rule. If a provider's charge is above the 80th percentile, in addition to paying the amount of the 80th percentile, USAA will pay an additional $10 or 5% of that 80th percentile, whichever is higher.[15] The amount calculated after "benchmarking" and "rounding up" is the final amount USAA will pay for the PIP claim, subject to the policy limits.[16]

## C. Procedural History

WPRC filed its initial complaint in June 2015[17] and amended it in November 2015. USAA filed its answer to the amended complaint in December 2015.[18] From June 2015 to January 2016, the parties exchanged written discovery requests and responses. On October 19, 2016, after several months of no activity in the case, USAA filed a motion to dismiss for failure to prosecute.[19] Two days later, WPRC filed the instant Motion and supporting brief. On May 12, 2017, USAA

---

[13] *Id.*

[14] *Id.* at 10–11.

[15] *Id.* at 11.

[16] *Id.*

[17] WPRC's Complaint (Trans. ID. 57432659).

[18] USAA's Answer to Plaintiff's Amended Complaint (Trans. ID. 58336085).

[19] USAA's Motion to Dismiss for Failure to Prosecute (Trans. ID. 59720660).

filed its answering brief, and WPRC filed a reply brief on May 26, 2017. On July 21, 2017, the Court heard oral argument on the Motion.[20]

In its amended complaint, WPRC asserts a single claim for declaratory judgment.[21] Specifically, WPRC seeks a judicial declaration that USAA, by using the RF System to determine the reasonableness of PIP claims, has wrongfully underpaid those claims in violation of 21 *Del. C.* § 2118(a).[22] Through its Motion, WPRC seeks to certify the following class:

> All care providers who, at any time since June 19, 2012, have billed medical-expense-related Delaware PIP claims to USAA, where USAA has subjected those claims to its "Reasonable Fee Methodology."[23]

## III. STANDARD OF REVIEW

The requirements for certification of a class action are set forth in Superior Court Civil Rule 23 ("Rule 23"). When considering a motion for class certification, the Court conducts a two-step analysis. First, the proposed class must satisfy each of the four elements of Rule 23(a):

a. Numerosity: the class is so numerous that joinder of all members is impracticable;

b. Commonality: there are questions of law or fact common to the class;

---

[20] July 21, 2017 Superior Court Proceeding Worksheet (Trans. ID. 60883813).
[21] Am. Compl. ¶ 1.
[22] *Id.*
[23] WPRC's Opening Br. at 1.

5

c. Typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class;

d. Adequacy: the representative parties will fairly and adequately protect the interests of the class.

Second, if the Rule 23(a) prerequisites are satisfied, the Court must determine whether the action falls within one of three categories set forth in Rule 23(b). In the instant action, WPRC seeks to certify a class under Rule 23(b)(1)(A) or Rule 23(b)(2):

Rule 23(b)(1)(A): The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class;

Rule 23(b)(2): The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Because Rule 23 is patterned after Federal Rule of Civil Procedure 23, cases interpreting Federal Rule 23 are persuasive authority in Delaware courts.[24] When analyzing Rule 23's federal counterpart, a federal court must engage in a "rigorous analysis" in order to decide whether to certify a class.[25] This "rigorous analysis" is similarly required under Delaware Rule 23.[26] When conducting this analysis, the

---

[24] *See Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *7 (Del. Super. Aug. 8, 2012) (citing *Appriva S'holder Litig. Co. v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007)).
[25] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).
[26] *In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 432 (Del. 2012).

Court must evaluate the whole record and examine the method by which the plaintiff proposes to prove its claims on a classwide basis,[27] and may "delve beyond the pleadings to determine whether the requirements for class certification are satisfied."[28]

## IV. DISCUSSION

### A. WPRC's Standing

In USAA's opposition to the Motion, it contends that WPRC has no right to bring the instant action.[29] Specifically, USAA argues that WPRC purports to bring this action as an assignee of its patients but the assignment forms signed by WPRC's patients are unenforceable.[30] WPRC counters by arguing that it brings this action on its own behalf and as the assignee of its patients. WPRC cites *Sammons v. Hartford Underwriters Ins. Co.*,[31] arguing that a health care provider who submits PIP claims to its patient's auto insurer qualifies as a "claimant" under 21 *Del. C.* § 2118B and has a private right of action to sue for unpaid/underpaid bills.[32] At oral argument, USAA did not address *Sammons* or respond to WPRC's

---

[27] *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316–17 (3d Cir. 2008) (internal citations omitted).

[28] *Id.* at 316 (internal citations omitted); *see also Dukes*, 564 U.S. at 351 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.").

[29] It appears that USAA is launching a standing challenge here, although it does not explicitly characterize it as such.

[30] USAA's Opp'n Br. at 18.

[31] 2011 WL 6402189 (Del. Super. Dec. 15, 2011).

[32] WPRC's Reply Br. at 11–12.

argument on standing. The Court therefore assumes that USAA has abandoned its challenge to WPRC's standing.

## B. Rule 23(a)

### a. Numerosity

The parties do not dispute that this requirement is satisfied.

### b. Commonality

Generally, a purported class should share at least one common question of law or fact to meet the commonality requirement.[33] At first impression, as WPRC contends, there appear to be many factual and legal questions in common, such as: Is the proposed class member a Delaware care provider? Has it sent PIP claims to USAA and have those claims been subject to the RF System? Does the RF System violate the Delaware PIP statute?[34] But commonality requires more than that.

The United States Supreme Court elaborated at length on the commonality element in *Wal-Mart Stores, Inc. v. Dukes*. In that case, three Wal-Mart female employees sought to certify a class consisting of all women employed at Wal-Mart retail stores who had been subjected to Wal-Mart's pay and promotion policies and practices.[35] They alleged that Wal-Mart's "uniform corporate culture" permitted discrimination against women when its managers exercised their discretionary

---

[33] *E.g.*, *Smith v. Hercules, Inc.*, 2003 WL 1580603, at *7 (Del. Super. Jan. 31, 2003) (internal citations omitted).
[34] WPRC's Opening Br. at 15.
[35] 564 U.S. at 346.

power in making promotion and pay decisions.[36] The Supreme Court recognized in *Dukes* that "any competently crafted class complaint literally raises common 'questions'."[37] In *Dukes*, the purported common questions included, "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice?"[38] The Supreme Court held that merely reciting these questions was not sufficient to establish commonality.[39] It further explained that commonality requires that the class members have all "suffered the same injury" which generated claims that can "productively be litigated at once."[40] Their claims must "depend upon a common contention" which must be "capable of classwide litigation."[41] Namely, the determination of that contention will "resolve an issue that is central to the validity of each one of the claims in one stroke."[42]

WPRC contends that the one central claim common to all class members is whether USAA, by applying the RF System to determine the reasonableness of PIP claims, fails to pay the reasonable medical expenses required under 21 *Del. C.* § 2118.[43] The Court finds that this claim cannot be resolved on a classwide basis.

---

[36] *Id.* at 345.
[37] *Id.* at 349.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 350.
[41] *Id.*
[42] *Id.*
[43] *E.g.*, WPRC's Opening Br. at 1. *See also* July 21, 2017 Oral Argument Transcript ("Oral Arg. Tr.") at 15:13–15:16 (Trans. ID. 61089819) ("The case is about whether [USAA's] methodology consistently . . . is designed to underpay, and does underpay, the range of reasonableness.").

Under Delaware law, in order to prove an insurer's payment violates 21 *Del. C.* § 2118, the burden lies on the plaintiff to show the incurred medical expenses are "reasonable and necessary."[44] As noted by USAA, this is a factual determination and requires a particularized assessment of individual issues, for example, each plaintiff's injuries, treatment, and medical bills.[45]

WPRC argues that the crux of this action is not about whether each plaintiff's charges are reasonable, but whether the amounts USAA ultimately paid are *unreasonable*.[46] But this cannot be resolved on a classwide basis either. The RF System calculates and determines a benchmark amount for each CPT code based upon geozip and time period. The PIP claims submitted by each putative class member presumptively contain medical procedures with different CPT codes, and the procedures presumptively have occurred at different times and in different geographic locations. It appears WPRC intends to prove that there is an objectively reasonable amount (or a range of amounts) for each CPT code within a specific geozip and time period, and every single benchmark amount calculated by the RF System is lower than that objectively reasonable amount. But WPRC has not offered or provided a convincing plan to prove that on a classwide basis.

---

[44] *Murphy v. United Servs. Auto. Ass'n*, 2005 WL 1249374, at *2 (Del. Super. May 10, 2005).
[45] USAA's Opp'n Br. at 27; *see also Watson v. Metro. Prop. & Cas. Ins. Co.*, 2003 WL 22290906, at *5–6 (Del. Super. Oct. 2, 2003) ("[T]he determination of the 'reasonableness' of a medical provider's bills is entirely factual in nature.") (internal citations omitted).
[46] WPRC's Reply Br. at 15 ("The issue, then, is not whether the provider *charged* a reasonable fee, but whether USAA *paid* a reasonable fee.").

10

WPRC proposes three ways to prove its claim: (1) evidence that a number of other insurance companies pay WPRC the full amount charged for the same treatments for which USAA claims a discount; (2) USAA's business records which show that WPRC's charges are lower to those of the Delaware medical community; and (3) nonparty discovery about the fees charged by other prolific Delaware medical service providers.[47] With respect to the first mode of proof, it only concerns what other insurers pay for *WPRC's own* PIP claims. Without corresponding evidence regarding other class members' PIP claims, it has little probative value in a classwide trial where WPRC needs to demonstrate that the amounts USAA pays other class members are also unreasonable. As to the other two modes of proof, although WPRC says it *would* obtain and present at trial evidence regarding other Delaware providers' charges, WPRC has not submitted any such evidence. WPRC also does not explain how it intends to conduct such discovery, which supposedly will cover a huge number of Delaware doctors and medical facilities and seeks to obtain information about their charges for numerous CPT codes during the past five years. WPRC makes conclusory allegations about USAA's wrongful conduct but does not provide evidence, or demonstrate how it could obtain evidence, to substantiate them. WPRC has failed to demonstrate how it can prove all class members' claims in one class action trial.

---

[47] WPRC's Reply Br. at 17–18.

Several other courts that have addressed a similar "reasonable fee" issue have reached the same conclusion. For example, in *Johnson v. Geico Casualty Company*[48] which has a very similar fact pattern,[49] plaintiffs also asserted one count for declaratory relief under 21 *Del. C.* § 2118, contending that the common issues for declaratory judgment involved whether defendants' policies and procedures were improper.[50] The U.S. District Court for the District of Delaware refused to certify a class whose PIP claims had been reduced by defendants using a computerized review system, finding that the commonality requirement was not met.[51] Similarly, in *Ross-Randolph v. Allstate Insurance Company*,[52] another federal district court, when faced with an allegation that the defendant used computer programs to generate an unreasonable amount in violation of a Maryland PIP statute, held that an insurer's obligation under Maryland's PIP statute necessarily turned on whether an individual claimant's charges were reasonable, and that the court cannot avoid individual inquires to determine that issue.[53]

---

[48] 673 F. Supp. 2d 255 (D. Del. 2009).

[49] One of plaintiffs' allegations in *Johnson* is that defendants reduced bills to the 80th percentile of charges submitted based on a recommendation made by their database providers. *Id.* at 266.

[50] *Id.* at 273.

[51] *Id.* ("The Court is persuaded that certifying the . . . Geographic Reduction Class to pursue a declaratory judgment . . . based on such a broad assertion of commonality is inconsistent with its duty to conduct a rigorous analysis into the requirements of Rule 23.").

[52] 2001 WL 36042162 (D. Md. May 11, 2011).

[53] *Id.* at *6. *See also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1208 (M.D. Fla. 2010) ("Plaintiffs' claims, even for declaratory relief, require proof that the amounts provided in the statutory fee schedule are not reasonable. . . . [W]hat constitutes a reasonable amount will vary based on many factors specific to the individual claim.").

12

WPRC cites to several cases in which courts seem to have certified a class under similar circumstances as the instant action. Although those cases also involve insurance companies' payment decisions supposedly generated from a computerized system, they can be distinguished in a significant respect, i.e., plaintiffs in those cases directly attacked the computer software program itself, rather than alleging the amount the insurers ultimately paid was unreasonable. For instance, in *Brooks v. Educators Mutual Life Insurance Company*,[54] plaintiff insureds sued a group health insurer, alleging that the insurer, by using a computer software program, failed to pay the reasonable and customary charge for anesthesia services.[55] Specifically, plaintiffs argued that the insurer's use of the program violated its insurance contracts because the program did not specify from which geographical area its data was drawn, and the program took into account the amount anesthesia providers ultimately accepted as payments as opposed to what they originally charged.[56] Plaintiffs in *Brooks* specifically alleged there were systematic flaws in the challenged computer software. Those allegations in *Brooks* were central to the plaintiffs' entire action, and unlike the allegations in the instant

---

[54] 206 F.R.D. 96 (E.D. Pa. 2002). WPRC did not cite *Brooks* in its briefs. It brought this case to the Court for the first time at oral argument. USAA opposed consideration of *Brooks*. The Court finds even if it takes *Brooks* into consideration, it does not support WPRC's position.
[55] *Id.* at 98–99.
[56] *Id.* at 99.

action, they had little to do with each class member's individual factual situation.[57] But WPRC has not alleged any such systematic flaws in the design or operation of the RF System. Unlike in *Brooks*, there is no common question in the instant action the resolution of which will produce a common answer to all class members' claims.

### c. Typicality

Typicality tests the sufficiency of the named plaintiffs.[58] The class representative must be part of the class and "possess the same interest and suffer the same injury as the class members."[59] Where a class representative is subject to a unique defense, typicality may be lacking.[60] WPRC asserts that its claim is not only typical, but also identical to those of other class members. WPRC further argues that its claim arises from the same event that gives rise to claims of other class members, i.e., USAA's applying the RF System to PIP claims, and is based on the same legal theory, i.e., violation of the Delaware PIP statute.[61]

---

[57] Most other cases cited by WPRC can be distinguished for the same reason. For example, in *First State Orthopaedics v. Concentra, Inc.*, the plaintiff insured alleged that the computer bill review system adopted by the insurer was manipulated through certain "faulty and corrupt" statistical methods and the amount ultimately paid was calculated in an "arbitrary and capricious manner" based on this "flawed database." 534 F. Supp. 2d. 500, 505 (E.D. Pa. 2007).

[58] *Johnson*, 673 F. Supp. 2d at 270 (internal citations omitted).

[59] *E.g.*, *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 529 (D. Md. 2001) (internal citations omitted). The United States Supreme Court has stated that the commonality and typicality requirements tend to merge as they both serve as guideposts for determining whether the named plaintiffs' claims and the class claims are so interrelated. *Dukes*, 564 U.S. at 349 n.5 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).

[60] *Ostrof*, 200 F.R.D. at 529.

[61] WPRC's Opening Br. at 17.

Typicality requires that a class representative maintains a very similar factual and legal position as other class members.[62] As discussed above, WPRC's entire case focuses on unreasonableness of USAA's PIP payments, the proof of which strongly depends on evaluation of each class member's individual circumstances. Presumably WPRC would encounter defenses that may not be asserted against all other class members. Therefore, the Court does not find the typicality that Rule 23(a) demands.

### d. Adequacy

USAA contends that WPRC is not a qualified class representative because it lacks the basic understanding of the bill review system utilized by USAA and how that system operates.[63] USAA also contends that WPRC lacks the desire to vigorously litigate the instant action because it did no work for eight months before it filed the Motion which "lifted large sections from its [c]omplaint."[64] Finally, USAA suggests that WPRC is not a qualified class representative because it engaged in unlawful billing and referral practices.[65] Because the Court finds that both commonality and typicality are not satisfied, the Court need not address the adequacy prong.[66]

---

[62] *See, e.g., Leon N. Weiner & Assocs. v. Krapt*, 584 A.2d 1220, 1225 (Del. 1991).
[63] USAA's Opp'n Br. at 34.
[64] *Id.*
[65] *Id.*
[66] *See, e.g., Mentis v. Del. Am. Life Ins. Co.*, 2000 WL 973299, at *1 (Del. Super. May 30, 2000) (internal citations omitted) ("The first step [of deciding whether to certify a class under Rule 23]

15

## C. Rule 23(b)

If a class representative fails to meet any of the Rule 23(a) requirements, analysis under Rule 23(b) is unnecessary. However, even if WPRC had satisfied the Rule 23(a) requirements, it cannot satisfy the Rule 23(b) requirements.

### a. 23(b)(1)(A)

Rule 23(b)(1)(A) intends to avoid the risk of prejudice that may be suffered by the opposing party. It addresses the concern that if individual class members bring multiple actions, the opposing party may be subject to incompatible standards of conduct established by inconsistent adjudications.[67] In the instant action, USAA does not contend that it would suffer any prejudice if the case is not certified. In fact, it affirmatively asserts that individual PIP suits brought by the class members present no risk of incompatible standards of conduct to it.[68] Since the Court has already found that resolution of this case involves a fact-driven evaluation of each plaintiff's injuries, procedures, and medical bills, the Court agrees with USAA that judgment in each potential individual case would be predicated on a different factual situation, and thus the risk contemplated by Rule 23(b)(1)(A) does not exist here.

### b. 23(b)(2)

---

requires that the action satisfy all *four* of the prerequisites mandated by subsection (a) of the rule.").

[67] *See, e.g., Ross-Randolph*, at *8 (internal citations omitted).

[68] USAA's Opp'n Br. at 31.

16

At first impression, this case seems to fit under Rule 23(b)(2) because WPRC is challenging an act conducted by USAA "on grounds generally applicable to the class," i.e., usage of the RF System to process PIP claims. But the putative class lacks the required "cohesiveness" that makes the classwide declaratory relief appropriate.

It is well established that Rule 23(b)(2) class members/claims must be cohesive.[69] The key feature of a Rule 23(b)(2) class is the "indivisible nature of the injunctive or declaratory remedy warranted."[70] It means that the challenged conduct "can be enjoined or declared unlawful only as to all of the class members of as to none of them."[71] Rule 23(b)(2) does not authorize class certification when each class member may be entitled to a different declaratory judgment.[72] As discussed above, whether a class member in the instant case is entitled to the requested declaratory relief relies heavily on analysis of his particular circumstances. On the record before it, the Court does not find the requisite indivisible nature of the declaratory remedy sought on behalf of the whole class.

WPRC consistently asserts that it seeks only declaratory relief, not monetary damages, and is not attempting to certify a class under Rule 23(b)(3).[73] WPRC argues that Rule 23(b)(1)/(2) does not have the predominance requirement as in

---

[69] *E.g., Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).
[70] *Dukes*, 564 U.S. at 360.
[71] *Id.*
[72] *Id.*
[73] *See* WPRC's Reply Br. at 18; *see also* Oral Arg. Tr. at 23:10–23:11.

23(b)(3),[74] seemingly suggesting that Rule 23(b)(1)/(2) somehow imposes less rigorous certification standards than 23(b)(3). However, although predominance is not at issue here, a Rule 23(b)(2) class requires more cohesiveness than a (b)(3) class, because in a (b)(2) class action, unnamed class members are bound by the final result of the action and have no opportunity to opt out.[75] Here, since the unnamed members of the putative class cannot opt out, certifying a class action which will result in a unified declaratory judgment is unfair to them. This is especially so in light of the significantly disparate factual circumstances of each putative class member.

## V. CONCLUSION

For the foregoing reasons, the purported class does not meet the requirements for certification set forth in Rule 23. WPRC's Motion for Class Certification is hereby **DENIED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

---

[74] Rule 23(b)(3) mandates that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

[75] *Barnes*, 161 F.3d at 142–43.